**GOULD, INC., Plaintiff,**

v.

**MITSUI MINING & SMELTING CO., LTD., et al., Defendants.**

No. 85–3199.

United States District Court, N.D. Ohio, E.D.

May 2, 1990.

Maynard F. Thomson, Jones Day Reavis & Pogue, Cleveland, Ohio, for plaintiff.

Lance Gotthoffer, Marks Murase & White, New York City, John D. Joliffe, Black McCluskey Souers & Arbaugh, Canton, Ohio, for Mitsui Min.

Brice M. Clagett, Covington & Bulring, Washington, D.C., Patricia Hemann, Hahn

Loeser & Parks, Cleveland, Ohio, for Pechiney.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This matter comes before the court on motions by defendants Mitsui Mining & Smelting Company, Ltd. (Mitsui) and Pechiney Ugine Kuhlmann/Trefimetaux (Pechiney/Trefimetaux), to dismiss the complaint filed by Gould, Inc. (Gould). The parties having fully briefed the issues, the court will rule on these motions, in part, without conducting oral argument. *See* Local Rule 3.01. This order is limited to arguments made in both motions to dismiss concerning Gould's claims under the Racketeer Influenced and Corrupt Organizations provisions of the Organized Crime Control Act of 1970 (RICO), 18 U.S.C. §§ 1961 *et seq.*[1]

■ A motion to dismiss will be granted only if, treating all well-pled allegations as true, the non-movant will be unable to recover under the pleading in question. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983), *cert. denied*, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). According to the allegations found in and pertaining to claim Nos. 5 (RICO, against Mitsui) and 6 (RICO, against Pechiney/Trefimetaux) in Gould's complaint, the following constitutes the basis for Gould's RICO claims:

In August 1983, Dale C. Danver left his employment with Gould in its copper foil division and created a company called Danver Technologies Group, Inc. (DTG). Prior to leaving Gould, Danver copied and removed Gould proprietary information which included Gould trade secrets involving the manufacture of copper foil and through DTG, proceeded to attempt to sell this information to other companies. As early as September 1983, DTG and Mitsui began to discuss the sale of copper foil technology to Mitsui. Miyakoshi Machine Tools Co., Ltd. (Miyakoshi), allegedly a Mitsui engineering subsidiary, and DTG signed an agreement for the transfer of this information in the summer of 1984, and at that time Gould trade secrets were allegedly transferred to Mitsui and Miyakoshi. This relationship continued at least until March of 1985 when Gould sued Danver in federal court. Meanwhile, in June of 1984, DTG met with representatives of Pechiney and its then wholly-owned subsidiary, Trefimetaux, regarding Pechiney/Trefimetaux's desire to construct a new copper foil plant in France. While a joint venture between DTG and Pechiney/Trefimetaux never materialized, some Gould trade secrets were allegedly transferred to Pechiney/Trefimetaux, and Danver did communicate that he was also dealing with Mitsui and Miyakoshi. After terminating its relationship with DTG in 1985, Pechiney/Trefimetaux formed a joint venture with Mitsui to construct a copper foil plant in Normandy, France, and this joint venture is ongoing currently. The joint venture is allegedly utilizing Gould trade secrets obtained from Danver and DTG.

In order to recover damages for a RICO violation, Gould must establish that defendants are associated with an enterprise engaged in interstate or foreign commerce and that defendants participated in the conduct of that enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c). A "pattern" entails at least two acts of racketeering activity. 18 U.S.C. § 1961(5). DTG is identified as the RICO "enterprise" in Gould's complaint and Mitsui, Pechiney, and Trefimetaux, are the "persons" associated with that enterprise.[2]

---

1. This court previously ruled on several aspects of the motions to dismiss filed by Mitsui and Pechiney/Trefimetaux but several unresolved issues remain as to each motion. As mentioned above, this order only resolves the arguments concerning the RICO claims made by Gould, and subsequent orders will address the personal jurisdiction argument made by Mitsui and the Foreign Sovereign Immunities Act argument made by Pechiney/Trefimetaux.

2. Miyakoshi is a defendant as well and is also named as a person associated with DTG in Claim No. 5 of the complaint for relief. However, Miyakoshi is not a party to the motions to dismiss at issue.

The complaint alleges nine acts of mail or wire fraud that were committed by Mitsui, and another nine committed by Pechiney/Trefimetaux, which form the basis for the alleged "pattern of racketeering activity." Defendants raise four arguments against Gould's RICO claims in the two pending motions to dismiss, and each will be discussed below. The first three arguments are made by Mitsui and Pechiney/Trefimetaux, and the last argument is made only by Pechiney/Trefimetaux.

## I.

Improper RICO Service of Process

■ Defendants argue that RICO authorizes service only on persons within the United States and, in this case, defendants were served in France and Japan and, as a result, the RICO claims against them should be dismissed. Gould responds that this is irrelevant because defendants were also served pursuant to Ohio's long-arm statute and there is no need to dismiss the RICO claim since service was proper under this statute.

■ RICO specifically authorizes service of process throughout the United States, 18 U.S.C. § 1965, but there is no specific authorization in the Act for service outside the United States. Therefore, foreign service of process cannot be justified under RICO. *Avianca, Inc. v. Corriea,* 705 F.Supp. 666, 684 (D.D.C.1989); *Soltex Polymer Corp. v. Fortex Indus., Inc.,* 590 F.Supp. 1453 (E.D.N.Y.1984), *aff'd,* 832 F.2d 1325 (2d Cir.1987). However, Fed.R. Civ.P. 4(i) and the advisory committee's notes indicate that the authority for effecting foreign service can be found under federal *or* state law (of the state where the district court is located). Therefore, foreign service for a RICO claim can be maintained when state law authorizes the foreign service. *Avianca,* 705 F.Supp. at 684; *North Carolina ex rel. Long v. Alexander & Alexander,* 680 F.Supp. 746, 749 (E.D.N.

C.1988); *Soltex,* 590 F.Supp. at 1460. Here, foreign service on Mitsui was allegedly justified by Ohio long-arm statute procedures and service on Pechiney/Trefimetaux was allegedly justified by the Foreign Sovereign Immunities Act (FSIA). 28 U.S.C. §§ 1601 *et seq.,* 1608. Whether service was indeed proper under these other state and federal statutes will be determined in subsequent orders by the court on other aspects of the instant motions to dismiss. Until these determinations are made, it is premature to dismiss the RICO claims based on improper service.

## II.

Pattern of Racketeering Activity--Continuity

■ Defendants argue that in order to have a pattern of racketeering activity, there must be a threat that the activity will continue or that there was repeated conduct in the past over an extended period of time. Their contention is that neither of these alternatives has been alleged by Gould in its complaint. Gould responds that it has alleged the threat of continuing activity by reference in the complaint to the Mitsui/Pechiney joint venture to build a plant in France which will use Gould trade secrets and will damage Gould's business.[3]

■ In order to establish a pattern of racketeering activity, a plaintiff must demonstrate that the predicate acts are related to, amount to, or pose a threat of, continuing criminal activity. *H.J., Inc. v. Northwestern Bell Tel. Co.,* —— U.S. ——, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989); *see also Callanan v. United States,* 881 F.2d 229, 234 (6th Cir.1989). In *H.J., Inc.,* the Court used the standard from Title X of the Organized Crime Control Act of 1970 to define relatedness that standard, located at 18 U.S.C. § 3575, states that "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar

---

**3.** Pechiney/Trefimetaux also argue that only a single scheme has been alleged in the Gould complaint and that multiple schemes are required for a RICO action. The United States Supreme Court has now definitively stated that a single "scheme" is sufficient under RICO, *H.J., Inc. v. Northwestern Bell Tel. Co.,* —— U.S. ——, 109 S.Ct. 2893, 2899, 2901, 106 L.Ed.2d 195 (1989), therefore this argument is without merit.

purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J., Inc.*, 109 S.Ct. at 2901. The Court held that continuity can be established by showing either a closed period of repeated conduct or a continuing period of repeated conduct. A closed period is a series of related predicates over a substantial period of time—more than a few weeks or months—that has come to an end. An open-ended· period of repeated conduct is conduct that by its nature projects into the future with a threat of repetition. *H.J., Inc.*, 109 S.Ct. at 2902.

Having analyzed the allegations in the complaint, the court concludes that Gould has sufficiently alleged a pattern of racketeering activity. The relatedness element is not in dispute, and it is clear from the complaint that the predicate acts by Mitsui, Pechiney/Trefimetaux, and the Mitsui joint venture, are all related to the alleged misappropriation of Gould trade secrets by Danver. It seems that the 13 months of predicate acts by Mitsui and the ten months of predicate acts by Pechiney/Trefimetaux are, by themselves, sufficient to establish continuity by establishing a closed period of repeated conduct. In addition, there are allegations of a threat of continued activity, in reference to the Mitsui/Pechiney joint venture. This joint venture allegedly will be using Gould trade secrets and, as this joint venture is constructed and operated, there will be an alleged continuing misappropriation of trade secrets that will continue to harm Gould. This certainly qualifies as a threat of continued wrongdoing as defined by *H.J., Inc.*, Therefore, Gould has adequately alleged a pattern of racketeering activity.

### III.

Predicate Acts–Insufficient Allegations

Defendants argue that fraud underlies allegations of mail or wire fraud, therefore it must be alleged that defendants made material misrepresentations or omissions of fact to Gould which Gould relied upon to its own detriment. They contend that since no such allegations can be found in the complaint, the RICO predicate acts of mail and wire fraud have not been sufficiently pled. As a result, there are no predicate acts to support the RICO claims and dismissal is warranted. Gould responds that an allegation of a scheme to defraud is sufficient, and since such an allegation is present in the complaint, there is no need to dismiss the RICO claims.

■ The mail fraud, 18 U.S.C. § 1341 and wire fraud, 18 U.S.C. § 1343, statutes share the same language in relevant part, therefore, the same legal analysis applies to both. *Carpenter v. United States*, 484 U.S. 19, 25 n. 6, 108 S.Ct. 316, 320 n. 6, 98 L.Ed.2d 275 (1987). There are two elements to mail/wire fraud: a scheme to defraud, and use of the mail/wires for purposes of executing the scheme to defraud. *Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443, 1453, 103 L.Ed.2d 734 (1989); *Morda v. Klein*, 865 F.2d 782, 785 (6th Cir.1989). It is clear, at least in this circuit, that in order to state a claim for mail/wire fraud, a plaintiff must allege a scheme to defraud, an intent to deceive or defraud, misrepresentations or omissions reasonably calculated to deceive, and reliance by the plaintiff on the misrepresentations or omissions. *Walters v. First Tenn. Bank, NA Memphis*, 855 F.2d 267, 272–73 (6th Cir.1988), *cert. denied*, 489 U.S. 1067, 109 S.Ct. 1344, 103 L.Ed.2d 812 (1989); *Grantham & Mann, Inc. v. American Safety Prods., Inc.*, 831 F.2d 596, 606 (6th Cir.1987); *Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152–53 (6th Cir.1987); *Bender v. Southland Corp.*, 749 F.2d 1205, 1215–16 (6th Cir. 1984). Moreover, Fed.R. of Civ.P. 9(b) requires fraud to be pled with particularity, therefore, at a minimum, the complaint must alleged the time, place, and contents of the misrepresentations upon which the plaintiff relies. *Bender*, 749 F.2d at 1216.

■ Analyzing the relevant allegations of the complaint, mail/wire fraud has not been adequately alleged. First, there has been no attempt to specify any misrepresentations made by any defendant to

Gould, and if omissions are at issue, there has been no attempt to delineate what facts were omitted or what duty defendants had to disclose information to Gould, which is necessary when one alleges a material omission. *United States v. Benny*, 786 F.2d 1410, 1418 (9th Cir.1986), *cert. denied*, 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986); *United States v. Barta*, 635 F.2d 999, 1006 (2d Cir.1980), *cert. denied*, 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981); *United States v. Rabbitt*, 583 F.2d 1014, 1026 (8th Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). Second, there are absolutely no allegations in the complaint concerning Gould's reliance on any misrepresentations or omissions. Accordingly, there are no sufficiently alleged predicate acts to support the RICO claims against Mitsui and Pechiney/Trefimetaux, and Claim Nos. 5 and 6 in the Gould complaint must be dismissed.[4]

## IV.

### Predicate Acts–Incapability of Committing Mail/Wire Fraud

Pechiney/Trefimetaux argue that at the time of the predicate acts in question, they were owned by France and therefore the FSIA applies. They contend that the FSIA is the only method by which jurisdiction can be obtained over foreign sovereigns and it does not mention criminal matters. As a result, a foreign sovereign is not subject to the criminal jurisdiction of courts of the United States, it cannot be indicted in the United States, and any criminal acts committed by that sovereign cannot form the basis for a RICO claim. They conclude that the alleged mail and wire frauds which constitute the predicate acts against Pechiney/Trefimetaux cannot support the RICO claim against them and the RICO claim must be dismissed. Gould responds that the FSIA is not relevant because it applies only to civil actions, and courts of the United States have taken an expansive view of

their criminal jurisdiction. Gould also argues that RICO requires only that the predicate acts be those for which a defendant could be indicted, not those for which a defendant could be convicted and thus discussion of this matter was irrelevant.

▆ This issue requires the resolution of two questions: first, is the FSIA the only method by which courts of the United States can obtain jurisdiction, criminal or civil, over a foreign sovereign; and second, if so, does this preclude the use of mail and wire fraud allegations against Pechiney/Trefimetaux as predicate acts for a RICO claim against them? The FSIA applies to Pechiney/Trefimetaux, as they were owned by France when the predicate acts in question occurred. *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 450 (6th Cir.1988).

▆ The FSIA provides that a foreign state shall be immune from the jurisdiction of United States courts except as provided in 28 U.S.C. §§ 1605–1607. 28 U.S.C. § 1604. 28 U.S.C. § 1330(a) (also part of the FSIA) provides that district courts have original jurisdiction "of any nonjury civil action against a foreign state ... as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity ... under sections 1605–1607 of this chapter." Sections 1330(a) and 1604 work in tandem, as section 1604 bars courts from exercising jurisdiction where a foreign state is entitled to immunity and section 1330(a) confers jurisdiction on district courts to hear suits when a foreign state is not entitled to immunity. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 109 S.Ct. 683, 688, 102 L.Ed.2d 818 (1989).

The legislative history behind the FSIA provides that the FSIA "set[s] forth the sole and exclusive standards to be used in resolving questions of sovereign immunity" and "prescribes ... the jurisdiction of Unit-

---

**4.** Gould contends that the application of the *Bender* rule will prevent a plaintiff in a trade secrets case from alleging mail and wire fraud in support of a RICO claim. While this may be true, this does not work an injustice on such a

plaintiff. Common law claims for the unlawful appropriation of trade secrets, unjust enrichment, and the like, are still available, and in a given case there may be other predicate acts that can form the basis for a RICO claim.

844

ed States district courts in cases involving foreign states," S.Rep. No. 1310, 94th Cong., 2d Sess. 11–12, *reprinted in* 1976 U.S.CODE CONG. & ADMIN.NEWS 6604, 6610. The United States Supreme Court has also held that the text and structure of the FSIA demonstrates Congressional intent that the FSIA is "the sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic,* 109 S.Ct. at 688. The *Argentine Republic* Court did not limit its conclusion concerning the FSIA to civil cases. Moreover, in peacetime situations, this country does not bring criminal proceedings against other nations.[5] Therefore, since the FSIA is the only method of obtaining jurisdiction over foreign sovereigns, and § 1330(a) refers only to civil, and not criminal, actions there is no criminal jurisdiction over Pechiney/Trefimetaux, an agency of the French government.

 Having established that no criminal jurisdiction exists in our courts over foreign sovereigns (therefore no mail or wire fraud prosecution could be conducted against Pechiney/Trefimetaux in the United States), the question becomes whether or not this makes any difference to Gould's RICO claim, which relies on acts of mail and wire fraud as predicate acts. 18 U.S.C. § 1961(1)(B) provides that racketeering activity means "any act which is *indictable* under any of the following provisions of title 18, United States Code ... section 1341 (relating to mail fraud), section 1343 (relating to wire fraud)...." (emphasis added). What the "indictable" language of § 1961(1)(B) means has never been clearly defined by the courts, though it has been strictly construed. *United States v. Bonanno Organized Crime Family,* 695 F.Supp. 1426, 1429 (E.D.N.Y.1988); *see also United States v. Kaye,* 556 F.2d 855, 859–60 (7th Cir.), *cert. denied,* 434 U.S. 921, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977) (since a misdemeanor can be prosecuted by an information or an indictment, it can be a predicate act under RICO); *Bache Halsey Stuart Shields, Inc. v. Tracy Collins*

*Bank & Trust Co.,* 558 F.Supp. 1042, 1045 (D.Utah 1983) (since a federal grand jury can return an indictment only when there is probable cause that a crime has been committed, a party must allege predicate acts with enough specificity to demonstrate that probable cause exists that a crime has been committed). The only statement the United States Supreme Court has made in this area is that racketeering activity does not consist of acts for which the defendant has been convicted, but of acts for which it could be convicted. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 488, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

In light of the "indictable" language under 18 U.S.C. § 1961(1)(B), and the *Sedima* Court's statement concerning predicate acts, the court concludes that the kind of fraud covered by § 1961(1)(B) (including mail and wire fraud) is criminal fraud, and such criminal fraud can constitute a predicate act under RICO only if the defendant in question could be prosecuted for that fraud. It is axiomatic that if there is no criminal jurisdiction over a person, that person cannot be prosecuted. Since there is no criminal jurisdiction over Pechiney/Trefimetaux in this country, they cannot be prosecuted for mail or wire fraud, and mail and wire fraud cannot form the basis for any predicate acts in the RICO claim against them. The only predicate acts mentioned in Claim No. 6 of the complaint are mail and wire fraud. Therefore, there is effectively an absence of any predicate acts alleged against Pechiney/Trefimetaux, and for this additional reason, the RICO claims against Pechiney/Trefimetaux should be dismissed.

For the reasons stated above, Claim Nos. 5 and 6 in Gould's complaint are DISMISSED.

---

5. Gould cites several cases involving the indictment and/or prosecution of foreign citizens, but these cases are clearly irrelevant to a situation, such as the instant case, when it is a foreign state or its agency at issue.