**Veronica McGEE, et al., Plaintiffs,**

**v.**

**CITY OF WARRENSVILLE HEIGHTS, et al., Defendants.**

**Nos. 1:97–CV–00162, 1:97–CV–2312.**

United States District Court, N.D. Ohio, Eastern Division.

July 30, 1998.

---

W. Craig Bashein, Law Offices of R. William Bashein, Cleveland, OH, for Lucille Wallace, plaintiff.

Gary Cook, Cook, Riley, Smith, Nance & Schwartz, Cleveland, OH, for Veronica McGee, Kimberly Hodge, Tony Richison, Essie Richison, Catherine Coleman, plaintiffs.

Alan E. Johnson, Leo R. Ward, Ward & Associates, Cleveland, OH, Ross S. Cirincione, Reddy, Grau & Meek, Garfield Heights, OH, for City of Warrensville Hts., Raymond Grabow, John L. Kalavsky, defendants.

## OPINION AND ORDER

GWIN, District Judge.

On May 5, 1997, Defendants City of Warrensville Heights, John L. Kalavsky and Raymond Grabow filed motions to dismiss the amended complaint in case 97–CV–162 [Docs. 15, 16, 17]. On October 30, 1997, and November 7, 1997, these same defendants

filed motions to dismiss the complaint in case 97–CV–2312 [Docs. 7, 8, 9].[1]

In making these motions to dismiss, defendants argue that the plaintiffs in both actions have failed to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6). In these cases, plaintiffs say defendants disseminated private information gleaned from governmental data bases for political purposes-to aid the election prospects of candidates aligned with defendants and to sabotage the election prospects of candidates not aligned with defendants.

As to these claims, defendants say plaintiffs, who were unsuccessful candidates in 1995 for election to city council, do not state causes of action under the Voting Rights Act, the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq* or 42 U.S.C. § 1983. In addition, Defendants John L. Kalavsky, the former police chief, and Raymond Grabow, the former mayor, claim they are entitled to qualified immunity.[2]

Finding that plaintiffs do not sufficiently allege violation of the Voting Rights Act, RICO, or a violation of constitutional right, the Court need not reach the issue of qualified immunity.[3]

### I. Factual Background

During the November 1995 election campaign, plaintiffs were candidates for Warrensville Heights City Council. At that time, Defendant Raymond Grabow was the elected mayor of Warrensville Heights. At that time, Defendant John Kalavsky was chief of police in the defendant city. Both have since resigned.

During the campaign Mayor Grabow instructed Police Chief Kalavsky to obtain background information on candidates whom he opposed. To obtain this information, Grabow told Kalavsky to use the Law Enforcement Automated Data System (LEADS) The LEADS computer is the statewide computerized information system used by criminal justice agencies. In using this LEADS system, Ohio Administrative Code § 4501:2–10–01 says only authorized law enforcement or criminal justice agencies may use the LEADS system. In using the LEADS system, authorized law enforcement agencies may use the system only for criminal justice matters.

Plaintiffs say defendants used the LEADS system for improper political purposes. In the 1995 municipal election, then mayor Defendant Grabow opposed the election of Plaintiffs McGee and Wallace to council seats. Plaintiffs allege that defendants used the LEADS system to obtain private information unrelated to any criminal justice matter. Having improperly obtained such information, plaintiffs say defendants wrongly circulated false and derogatory information about plaintiffs and others. Using the LEADS system in this manner allowed the defendants to intimidate and harass political opponents who wished to run for political office in Warrensville Heights. Using the LEADS system in this manner further allowed defendants to intimidate and harass persons who worked on the campaign of defendants' political opponents.

Plaintiffs' amended complaint generally alleges that defendants communicated false and deceptive materials to others not involved in law enforcement. In transmitting such information, plaintiffs say defendants

---

1. On December 23, 1997, defendants filed motions to consolidate these cases [Doc. 35 in 97–CV–162; Doc. 19 in 97–CV–2312]. As the defendants and the facts are the same in both, the Court will order these cases consolidated. See Fed.R.Civ.P. 42(a).

2. The Honorable Judge Lesley B. Wells granted the defendants' motion in 97–CV–162 to stay discovery and to continue the case management conference until the resolution of the Rule 12(b)(6) motions. This Court subsequently reaffirmed that order in 97–CV–162, and issued a similar order for 97–CV–2312.

3. *County of Sacramento v. Lewis*, ── U.S. ──, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998) (better approach to resolving cases where qualified immunity raised is to determine first whether deprivation of a constitutional right alleged); *Pyles v. Raisor*, 60 F.3d 1211, 1215 n. 1 (6th Cir.1995) ("We find it unnecessary to reach the question of immunity because of [plaintiff's] failure to demonstrate that [the defendant] violated any federal constitutional right.").

caused others to believe that plaintiffs were involved in criminal activity and were unsuitable candidates for office. No examples of false and deceptive materials are provided in the complaints.[4]

Near October 11, 1996, Defendant Kalavsky was placed on paid leave after being indicted on charges related to improper use of police computers and the LEADS computer system. Defendant Kalavsky was charged with unauthorized access to a computer system, theft in office, and forgery. Near March 6, 1997, the prosecutor dismissed these charges pursuant to a plea arrangement. In the plea agreement, Defendant Kalavsky resigned his position as chief of police and agreed to testify on behalf of the prosecution in related cases.

## II. Overview of opinion

Plaintiffs make claim under the Voting Rights Act, RICO, and 42 U.S.C. § 1983. In reviewing whether plaintiffs plead sufficient facts to avoid dismissal, the Court first reviews the plaintiffs' Voting Rights Act claim. To decide if plaintiffs sufficiently allege a cause of action under that act, the Court examines whether the Voting Rights Act gives candidates, not voters, a cause of action in circumstances not implicating race.

Next, the Court examines whether plaintiffs sufficiently plead a cause of action under RICO. In determining whether plaintiffs plead a cause of action under RICO, the Court examines whether the amended complaint sufficiently pleads injury to plaintiffs' business or property. Then, the Court examines whether the Defendant Warrensville Heights is a proper defendant in a RICO

action. As to the RICO cause of action against the individual defendants, the Court examines whether plaintiffs sufficiently plead the underlying predicate of fraud with particularity.

Finally, the Court looks to whether plaintiffs sufficiently plead causes of action under 42 U.S.C. § 1983. In examining the § 1983 pleading, the Court considers whether plaintiffs plead a cause of action for an unconstitutional invasion of privacy. In determining whether plaintiffs sufficiently allege a § 1983 action, the Court decides if defendants' access to the LEADS system, and use of information derived from that system, violate substantive due process. To determine if substantive due process is violated, the Court examines whether the allegations of the amended complaint shock the conscience and rise to the level of a constitutional injury.

## III. Procedural history

### A. Case 1:97–CV–162

On January 23, 1997, Plaintiffs Veronica McGee and Kimberly Hodge filed their complaint in case 1:97–CV–162. An amended complaint added three new party plaintiffs: Tony Richison, Essie Richison, and Catherine Coleman. All five plaintiffs were either city council candidates or affiliated with candidates running on the "Mitchell slate" in the 1995 city council elections.

In the amended complaint, the plaintiffs allege three causes of action: (1) violations of the Voting Rights Act of 1965, 42 U.S.C. § 1973; (2) violations of the Racketeer Influ-

---

4. However, the parties note in their papers briefing these motions that on the eve of the election the *Warrensville Heights Democrat*, a newsletter sponsored by the local Democratic party (of which Defendant Grabow is a member), published an article in the November 2, 1995 edition. The article was entitled "Mitchell Slate: A Mix of Carpetbaggers and Financial Incompetents." The article criticizes the candidates for city council whom prospective mayoral candidate James Mitchell supported.

Plaintiff Wallace was among those criticized in the article. "Lucille Wallace ... filed for bankruptcy just two months ago. Candidate Wallace now wants access to the City Treasury, but records show she cannot even manage her own personal finances...."

Plaintiff McGee also is mentioned for failing to meet the city's residency requirement. The article calls her "An old-fashioned honest-to-goodness 'Carpetbagger.'" Plaintiff Coleman is toted as another "Carpetbagger" for failure to meet city residency requirements for running for city council. The article cites Plaintiff Hodge as a mystery candidate with no governmental experience. Plaintiff Tony Richison was campaign manager for the Mitchell slate. The article cites both his financial and work history. It points to his filing for bankruptcy in 1991 and the fact that he twice left a Cleveland city job, the second time after being disciplined.

enced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c) and (d); and (3) violations of plaintiffs' Fourteenth Amendment rights under the Due Process Clause and Equal Protection Clause, pursuant to 42 U.S.C. § 1983. They seek $50,000 in compensatory damages and $500,000 in punitive damages. The McGee plaintiffs also seek an order enjoining the city and its agents "from conduct that abridges the rights of citizens to vote."

### B. Case 1:97–CV–2312

On September 8, 1997, Plaintiff Lucille Wallace sued the same defendants in Case No. 1:97–CV–2312. In her complaint, Wallace identifies herself as a candidate for "city counsel" [sic] in the 1995 election. In her complaint, Wallace alleges federal and state civil rights violations. In making her claim of civil rights violation, Plaintiff Wallace says defendants violated her right to privacy under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Wallace also makes state law claims under Ohio constitutional, statutory, and administrative law. She seeks $100,000 in compensatory damages, $200,000 in punitive damages, and any other appropriate relief.

### IV. Standard of review as to a motion to dismiss

A court properly grants a motion to dismiss only if it appears that the plaintiff can prove no set of facts that would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The complaint is construed in the light most favorable to the plaintiff and the court ac-

cepts as true all of the plaintiff's well-pled factual allegations. In deciding a Rule 12(b)(6) motion, the Court must determine whether the plaintiff can prove no set of facts supporting his claims that would entitle him to relief. *Ludwig v. Board of Trustees of Ferris State Univ.,* 123 F.3d 404, 408 (6th Cir.1997).

### V. Voting Rights Act

■ In Case No. 1:97–CV–162, the McGee plaintiffs allege a violation of Section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973.[5] In alleging a violation of the Voting Rights Act, these plaintiffs say defendants' practice of conducting investigations on candidates for public office through the police computer denied or abridged the right to vote on account of race.[6] To support this claimed violation of a right to vote on the basis of race, these plaintiffs allege that minority citizens of Warrensville Heights were denied the opportunity to elect candidates of their choice on an equal basis with non-minority voters. Plaintiffs further allege practices such as the police computer snooping impede free access to the political process.

■ Section 2(a) of the Voting Rights Act prohibits a state political subdivision from imposing any practices or procedures that "result in the denial or abridgement of the right to vote of any citizen who is a member of a protected class of racial and language minorities." *Thornburg v. Gingles,* 478 U.S. 30, 43, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986). Section 2(b) provides that a violation of subsection (a) occurs if the " 'totality of the circumstances' reveal that 'the political pro-

---

**5.** Section 2 of the Voting Rights Act, as amended, provides as follows:

(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or [because he or she is a member of a language minority group].

(b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members

have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided that nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

42 U.S.C. § 1973.

**6.** Plaintiffs also allege denial or abridgement of the right to vote on account of sex, but gender is not a predicate to Section 2 liability under § 1973(a).

cesses leading to nomination or election ... are not equally open to participation by members of a [protected class] ... in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.' " *Id.* (*quoting* 42 U.S.C. § 1973(b)). Under section 2 of the Voting Rights Act, private parties can enforce their rights. *Nixon v. Kent County, Mich.,* 790 F.Supp. 738, 742 (W.D.Mich.1992) (citations omitted).

▉ To bring a cause of action under section 2 of the Voting Rights Act, plaintiffs must allege that "the challenged system or practice, in the context of all the circumstances in the jurisdiction in question, results in minorities being denied equal access to the political process." *Id.* (citation omitted). Without some plausible allegation that minorities were denied equal access to the political process, a complaint under section 2 of the Voting Rights Act fails.

▉ Under this standard, the McGee amended complaint misfires. Apart from a conclusion that defendants' conduct "results in the denial of [sic] abridgment of right to vote on account of race and denies minority citizens of Warrensville Heights, Ohio the opportunity to elect candidates of choice on an equal basis with other voters," the plaintiffs make no allegations showing an abridgment of the right to vote of any citizen, protected or not protected.

In 1982, Congress amended Section 2 of the Voting Rights Act. The legislative history accompanying the 1982 amendments suggests the nature of conduct that section 2 was directed at.[7] Nothing in the language of § 2 or the legislative history of § 2 of the Voting Rights Act suggests that it was aimed at political dirty tricks.

In reviewing the sufficiency of plaintiffs' complaints, the Court finds no mention of whether minorities were excluded from any candidate slating process; or whether local campaigns are marked by racial appeals. The Court finds no mention that the number of minorities elected to city offices was less because of defendants' conduct.

▉ Section 2 prohibits election practices resulting in minorities losing elections because of discrimination and exclusion, not because of fractioned political alliances. *Nixon,* 790 F.Supp. at 743. Without a more particularized allegation that practices worked to exclude minorities *on the basis of race,* § 2 will not support an action arising from campaign "dirty tricks."

▉ An unsuccessful candidate attempting to challenge election results does not have standing to sue under the Voting Rights Act. Standing under the Act is limited to "aggrieved persons," and that category is confined to persons whose voting rights have been denied or impaired. *Roberts v. Wam-*

---

7. The legislative history accompanying the 1982 amendments enumerates several factors that could be pertinent in evaluating allegations that an electoral procedure violates § 2. Plaintiffs made no reference to these objective factors in their amended complaint. Those objective factors include:
 1. the extent of any history of official discrimination in the state or political subdivision that touched the right of members of the minority group to register, vote, or otherwise participate in the democratic process;
 2. the extent to which voting in the elections of the state or political subdivision is racially polarized;
 3. the extent to which the state or political subdivision has used unusually large election districts, majority vote requirements, anti-single shot provisions, or other voting practices or procedures that may enhance the opportunity for discrimination against the minority group;
 4. if there is a candidate slating process, whether the members of the minority group have been denied access to that process;
 5. the extent to which members of the minority group in the state or political subdivision bear the effects of discrimination in such areas as education, employment and health, which hinder their ability to participate effectively in the political process;
 6. whether political campaigns have been characterized by overt or subtle racial appeals; and,
 7. the extent to which members of the minority group have been elected to public office in the jurisdiction.

 *Ortiz v. City of Philadelphia Office of City Comm'rs Voter Registration Div.,* 824 F.Supp. 514, 521 (E.D.Pa.1993) (*citing* S.Rep. No. 417, at pp. 206–07), *aff'd,* 28 F.3d 306 (3d Cir.1994).

*ser,* 883 F.2d 617, 621, 624 (8th Cir.1989).[8] Plaintiffs do not claim their individual voting rights were denied or impaired.

Plaintiffs were not denied access to the ballot on account of their race nor do plaintiffs make more than a conclusory allegation in the complaint that individuals within the community were denied the right to vote for plaintiffs on the basis of their race.

In sum, the plaintiffs are left to allege that defendants' improper use of the LEADS system, diminished *their* chances of election. To state plaintiffs' position exposes its breadth. Virtually everything done in elections advances or detracts from a candidate's chances for election. Without a more systemic showing of effect upon minority candidates, such dirty tricks will not sustain a cause of action under § 2 of the Voting Rights Act.

In their complaints, plaintiffs say defendants violated the rights of the plaintiffs under the statute. Apart from putting plaintiffs in a less favorable light, the complaints do not show violation of the rights of the voters in Warrensville Heights. The amended complaint alleges that the defendants' actions with computer spying "violated Plaintiff's federally protected rights under The Voting Rights Act of 1965 (42 U.S.C.1973)."[9]

As reprehensible as many citizens undoubtedly find the use of government computers to spy on political opponents, "[n]ot every incidental burden on the right to vote violates § 2." *Ortiz v. City of Philadelphia Office of the City Commissioners Voter Registration Div.,* 824 F.Supp. 514, 539 (E.D.Pa. 1993) (then version of state voter purge law

not a *per se* violation of Voting Rights Act), *aff'd,* 28 F.3d 306 (3d Cir.1994).

■ The Court finds that the McGee plaintiffs do not allege a cause of action under Section 2 of the Voting Rights Act upon which relief can be granted. In finding that plaintiffs' complaints do not allege a violation of the Voting Rights Act, the Court finds no allegation other than the complaint that dirty tricks impaired their campaign prospects. Such is insufficient, as a matter of law.

The Court grants the defendants' motion to dismiss the Voting Rights claim of the McGee plaintiffs' amended complaint. It appears to the Court that these plaintiffs lack standing to bring this claim, and can prove no set of facts entitling them to relief under this statute.

## VI. RICO claim

### A. RICO claim against Defendant Warrensville Heights

In their amended complaint, the McGee plaintiffs make claim for a civil violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* They specifically cite § 1962(c) and (d) which provide as follows:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

---

**8.** The *Roberts* court explained:

We conclude that an unsuccessful candidate attempting to challenge election results does not have standing under the Voting Rights Act. Although the "aggrieved person" language might be stretched to include an unsuccessful candidate such as Roberts, we are unconvinced that Congress intended it to be stretched that far. The purpose of the Voting Rights Act is to protect minority voters, not to give unsuccessful candidates for state or local office a federal forum in which to challenge elections. In addition, we see good reasons why Congress would have wished to confer standing on defeated candidates. First, because of the potential divergence between the interests of a candidate seeking office and citi-

zens attempting to enforce their right to vote, it is difficult to see an aggrieved candidate as being a proper party to bring a Voting Rights Act action. And second, because state and local election contests are quintessential state and local matters, to extend standing to an unsuccessful candidate to challenge his electoral defeat under the Voting Rights Act would violate principles of federalism in a highly radical way—an intention that we should not attribute to Congress except upon its unmistakably clear manifestation in the statutory language.

*Roberts v. Wamser,* 883 F.2d at 621.

**9.** Amended complaint, at ¶ 65.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

In their amended complaint alleging RICO liability, the McGee plaintiffs plead mail fraud and wire fraud as predicate acts.[10] In making this RICO claim, plaintiffs say Defendants Grabow and Kalavsky are the relevant "persons" for purposes of RICO liability.[11] In making this RICO claim, plaintiffs say the Defendant City of Warrensville Heights is the relevant "enterprise." [12]

18 U.S.C. § 1964(c) provides that:

[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

■ In order to establish standing under § 1964(c), a plaintiff must show (1) a violation of § 1962, (2) an injury to his business or property, and (3) that his injury was proximately caused by a RICO violation. See *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *Khurana v. Innovative Health Care Systems, Inc.*, 130 F.3d 143, 147 (5th Cir.1997), *petition for cert. filed*, (U.S. Mar. 12, 1998) (No. 97–1507); *Cullom v. Hibernia Nat'l Bank*, 859 F.2d 1211, 1214 (5th Cir.1988).

A RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)

The injury to "business or property" language in 18 U.S.C. § 1964(c) was taken from Section 4 of the Clayton Act, 15 U.S.C. § 15. The Supreme Court of the United States has held that this language has "restrictive significance" in that it would, for example, "exclude personal injuries suffered." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979). Case law interpreting the Clayton Act has been persuasive and heavily relied upon by courts addressing issues involving RICO. See *Holmes*, 503 U.S. at 267–68, 112 S.Ct. 1311.

■ A complaint will not support RICO jurisdiction unless it shows damage to business or property with some certainty. A RICO claim is not ripe for adjudication where the claimed injury is speculative. *De-Mauro v. DeMauro*, 115 F.3d 94, 96 (1st Cir.1997); *Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 847 (1st Cir.1990).

■ Because plaintiffs must allege damage to business or property with some specificity, the Court reviews plaintiffs' complaints to see if the complaint alleges such damage with some degree of specificity.

In reviewing plaintiffs' complaints to see if they allege damages with any specificity, the Court finds the complaint deficient. More important, the Court finds this lack of specificity is inherent to the nature of plaintiffs' claims.

At its core, plaintiffs say defendants snooping impaired their ability to obtain the property associated with elective office. Among the myriad of factors that affect elections, it is near impossible to show with any specificity that defendants' conduct caused plaintiffs to lose their elections. Given the uncertainty of the elective process, plaintiffs' complaint fails to allege with sufficient specificity what damages to plaintiffs' business or property flowed from the illegal acts. See *First Nationwide Bank v.. Gelt Funding Corp.*, 27 F.3d 763, 768–69 (2d Cir.1994), *cert. denied*, 513 U.S. 1079, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995) ("[A]s a general rule, a cause of action

---

**10.** According to 18 U.S.C. § 1961(1) " 'racketeering activity' means ... (B) any act which is indictable under any of the following provisions of [18 U.S.C.]: ... section 1341 (relating to mail fraud), section 1343 (relating to wire fraud)...."

**11.** According to 18 U.S.C. § 1961(3) " 'person' includes any individual or entity capable of holding a legal or beneficial interest in property;"

**12.** According to 18 U.S.C. § 1961(4) " 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;"

does not accrue under RICO until the amount of damages becomes clear and definite").

Because of the inherently speculative nature of plaintiffs' damages, the Court finds that plaintiffs' complaint fails to allege a RICO cause of action.

■■■ Only a person "injured in his business or property" may recover damages under RICO. 18 U.S.C. § 1964(c). "Injury to business or property" excludes personal injury. *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 918 (3rd Cir.1991). A person injured in his business or property as the result of a RICO violation may bring a private right of action for damages. 18 U.S.C. § 1964(c). *See Fleischhauer v. Feltner*, 879 F.2d 1290, 1295–96 (6th Cir.1989), *cert. denied*, 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1029 (1990). The Sixth Circuit has held that litigants may not recover for personal injuries when making claim under RICO as that statute was "designed to give prosecutors an additional weapon against organized crime." *Drake v. B.F. Goodrich Co.*, 782 F.2d 638, 644 (6th Cir.1986).

■■■ The compensatory and punitive damages plaintiffs seek are for the defendants' interference "with the ability of the Plaintiff[s] to engage in fair and open elections." This does not appear to be the type of injury to "business or property" RICO contemplates,[13] but more an injury to the defeated candidates' reputational interests and perhaps a more intangible injury to the local body politic. Having found that plaintiffs' injuries are not within the ambit sought to be protected by RICO, the Court believes the complaint fails to allege a cause of action.

Even if plaintiffs showed injuries of the type subject to protection under RICO and even if plaintiffs alleged injury with sufficient specificity, the claims would be subject to dismissal for independent and sufficient grounds.

■■■ Authority is split over whether a municipality such as Defendant Warrensville Heights may be a "person" for purposes of RICO.[14] But even if municipalities were a "person" for RICO purposes, cities still are not appropriate RICO defendants.

■■■ Under RICO, a "person" is liable only if he manifests a specific intent associated with the underlying predicate offenses. *Genty*, 937 F.2d at 908. The specific intent to deceive is an element of both predicate acts here—mail fraud and wire fraud. *See Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir.1991), *cert. denied*, 502 U.S. 1094, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992). Because a municipality is incapable of forming the specific intent associated with the underlying predicate acts of fraud, Defendant Warrensville Heights cannot be liable under RICO in these circumstances. *County of Oakland by Kuhn v. City of Detroit*, 784 F.Supp. 1275, 1283 (E.D.Mich.1992). *See also Lancaster Community Hosp.*, 940 F.2d at 404; *Jade Aircraft Sales, Inc. v. City of Bridgeport*, No. B–83–454 WWE, 1990 WL 128573, at *1 (D.Conn. July 9, 1990); *Albanese v. City Fed.Sav. & Loan Ass'n*, 710 F.Supp. 563, 569 (D.N.J.1989); *North Star Contracting Corp. v. Long Island R.R. Co.*, 723 F.Supp. 902, 907–09 (E.D.N.Y.1989)(railroad that was public benefit corporation could not be held liable under RICO).

---

13. Section 1964(c) reads:
 Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

14. There is a split of authority as to whether a municipal corporation, such as Defendant Warrensville Heights, comes under the statutory definition of "person" for the purposes of RICO liability. *Smallwood v. Jefferson County Gov't*, 743 F.Supp. 502, 504 (W.D.Ky.1990) (county as

"quasi-municipal corporation" is not "person" for purposes of RICO); *Massey v. City of Oklahoma City*, 643 F.Supp. 81, 85 (W.D.Okla.1986) (city not a RICO person). *Compare with Nu–Life Constr. Corp. v. Board of Educ.*, 779 F.Supp. 248, 251–52 (E.D.N.Y.1991)(municipal corporation is a "person" within the meaning of RICO); *In re CitiSource, Inc. Sec. Litig.*, 694 F.Supp. 1069, 1079 (S.D.N.Y.1988)(same). As an Ohio city can hold legal title, the Court finds no difficulty in Defendant City of Warrensville Heights being a "person" for purposes of RICO.

Because plaintiffs cannot allege the specific intent to deceive necessary to support the predicate acts of mail and wire fraud, the complaints fail to state a cause of action under RICO against Defendant Warrensville Heights. Some courts have held municipalities are inappropriate RICO defendants because treble damages recoverable under RICO resemble punitive damages which the common law has not imposed on those political bodies. *Genty,* 937 F.2d at 914 (holding municipalities not liable for civil RICO claims brought under § 1964(c) because treble damages are mandatory); *Lewis v. Village of Minerva,* 934 F.Supp. 268, 272 (N.D.Ohio 1996)(holding that punitive damages may not be recovered against a municipality in a wiretap case); *Massey,* 643 F.Supp. at 85–86. Punitive damages generally are not recoverable against cities in Ohio.

Because plaintiffs' complaint does not, and cannot, allege damages with sufficient specificity, because plaintiffs' complaint does not show damage to plaintiffs' business and property, because plaintiffs' cannot allege Warrensville Heights had the specific intent necessary to the predicate fraud acts, and because Defendant Warrensville Heights is not liable for punitive damages in these circumstances, the Court dismisses the McGee plaintiffs' RICO claim against the defendant city.

### B. RICO claim against Defendants Grabow and Kalavsky

Having found that the McGee claim against the city under RICO is subject to dismissal, the Court now examines whether McGee adequately alleges a cause of action under RICO against Defendants Grabow and Kalavsky.

As described, RICO requires that damage to a plaintiffs' business or property be pled with reasonable specificity. Plaintiffs fail to satisfy this requirement. Given the uncertainty of whether defendants' acts proximately caused the election loss, it appears that plaintiffs are unable to meet this requirement as to Defendants Grabow and Kalavsky.

In making a RICO claim against Grabow and Kalavsky, plaintiffs allege that the defendants committed the predicate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. To maintain its RICO action, plaintiffs must show that each element of mail fraud or wire fraud has been committed by the defendants. "To allege a violation of the mail fraud statute, it is necessary to show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." *Central Distributors of Beer, Inc. v. Conn,* 5 F.3d 181, 184 (6th Cir.1993), *cert. denied,* 512 U.S. 1207, 114 S.Ct. 2678, 129 L.Ed.2d 812 (1994) (citation omitted).

The amended complaint makes no allegation that the defendants used the mails to perpetrate the alleged fraud. The plaintiffs' failure to aver the use of the mails to further their fraud is fatal to their use of mail fraud as a predicate offense under RICO.

A wire fraud violation consists of (1) the formation of a scheme or artifice to defraud (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud. *Id.* (citation omitted).

The Sixth Circuit has held that a scheme to defraud must involve "intentional fraud." *Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir.1984). Because the claim must allege an intentional scheme to defraud, the McGee plaintiffs cannot maintain a civil RICO claim against these defendants without evidence that the defendants made misrepresentations or omissions of material fact to these plaintiffs. Moreover, plaintiffs must allege that the five McGee plaintiffs relied on those misrepresentations or omissions to their detriment.[15] *Central Distributors of*

---

15. The Sixth Circuit explained the reliance element as follows:

... we believe the district court properly granted summary judgment in favor of the

*Beer*, 5 F.3d at 184; *see also Bender*, 749 F.2d at 1216; *Blount Financial Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152 (6th Cir.1987) (holding that the plaintiff must plead with particularity the false statements of fact made by the defendants to the plaintiffs and the facts showing that the plaintiff relied on those statements to its detriment).

■ Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity ." The particularity requirement applies to any attempt to plead mail and wire fraud as predicate acts under RICO. *Blount Financial Servs.*, 819 F.2d at 152–53; *Gould, Inc. v. Mitsui Mining & Smelting Co., Ltd.*, 750 F.Supp. 838, 842–43 (N.D.Ohio 1990).

■ In addition, the Sixth Circuit has held that "the defendant must make a false statement or omission of fact to the plaintiff to support a claim of wire fraud or mail fraud as a predicate act for a RICO claim" and the plaintiff must have relied upon those statements to her detriment. *Central Distributors*, 5 F.3d at 184; *accord Blount Financial Servs.*, 819 F.2d at 152–53 (specifically holding that both of these allegations must be pleaded with particularity); *Gould*, 750 F.Supp. at 842–43 (also holding that both of these allegations must be pleaded with particularity). Moreover, in pleading mail fraud as a predicate act under RICO, "a plaintiff must at minimum allege the time, place and contents of the misrepresentation(s) upon which he relied." *Bender*, 749 F.2d at 1216; *accord Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485, 495 (6th Cir.1990).

Plaintiffs' amended complaint is devoid of any allegation that any of the plaintiffs detrimentally relied upon the defendants' false statements or omissions of fact to any of the plaintiffs. Rather, plaintiffs allege in paragraph 35 of their amended complaint, that the defendants "knowingly caused to be transmitted by wire a series of false and deceptive materials which either by failures to disclose or affirmative misrepresentations, *mislead others into believing* either: that the Plaintiffs were involved in criminal activity; or that the Plaintiffs were not suitable to participate in fair and open elections." (Emphasis added). In paragraph 36, plaintiffs allege the defendants' unidentified false representations "were intended and did produce *reliance by others* for the purpose of refusing to consider the Plaintiffs as viable candidates . . . ." (Emphasis added). The amended complaint specifically pleads reliance by others, not the plaintiffs. This is fatal to maintaining wire and mail fraud as RICO predicate offenses. Plaintiffs' citation to four exhibits attached to the amended complaint (consisting of newspaper stories and criminal court papers related to Defendant Kalavsky's indictment) does not rescue this defective pleading.

The amended McGee complaint fails to state a legally cognizable RICO claim. Although the amended complaint generally alleges predicate acts of mail and wire fraud, the amended complaint fails to allege particular facts that must be plead to show such predicate acts. In particular, the Court notices the plaintiffs' failure to allege false statements and the plaintiffs' reliance on those false statements. Because plaintiffs have not adequately pleaded predicate acts, neither a "pattern of racketeering activity" nor a § 1962(d) conspiracy have been adequately pleaded as well. *Craighead*, 899 F.2d at 495.

Accordingly, the Court will grant the defendants' motion and dismiss the RICO count of the McGee plaintiffs' amended complaint pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6).

---

defendants on the RICO complaint. In our opinion, the fraud connected with mail or wire fraud must involve misrepresentations or omissions flowing from the defendant to the plaintiff. Although a general fraudulent scheme which incidentally affects a person may support other civil claims against the wrongdoer, the victim cannot assert a RICO claim absent evidence that the defendant made representa-

tions to the victim. [Plaintiffs] ha[ve] not produced a shred of evidence showing that any of the defendants made any false statements or omissions to [the plaintiffs] or that [plaintiffs] relied on any statement or omission to its detriment.

*Central Distributors of Beer, Inc. v. Conn*, 5 3d. at 184.

## VII. Candidates' right to privacy

In both 97–CV–162 and 97–CV–2312, the plaintiffs claim the defendants violated their constitutional and civil rights to privacy. In claiming their rights to privacy were violated, plaintiffs say the defendants' use of the police LEADS computer to gather information on city council candidates opposed to the then incumbent mayor, Defendant Grabow, violated their rights.

The McGee plaintiffs plead a grab bag of offenses under this count citing the Due Process and Equal Protection Clauses of the Fourteenth Amendment, the Voting Rights Act, race and sex discrimination, and the "guaranty" of 42 U.S.C. § 1983. Wallace limits her federal claim to the defendants' alleged invasion of her right to privacy under the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution.

■ Section 1983 is not a separate source of substantive rights. The Sixth Circuit has held that unless plaintiffs show deprivation of some federal constitutional or statutory right, Section 1983 does not provide for redress even if the plaintiff's common law rights have been violated and even if remedies available under state law are inadequate. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir.1995); *Lewellen v. Metropolitan Government of Nashville and Davidson County, Tenn.*, 34 F.3d 345, 347 (6th Cir.1994), *cert. denied*, 513 U.S. 1112, 115 S.Ct. 903, 130 L.Ed.2d 787 (1995).

■ In the instant cases, the Court has determined that the McGee plaintiffs cannot show a violation of the federal RICO and Voting Rights statutes. In making a § 1983 claim, plaintiffs reference sex and race discrimination. But plaintiffs' reference does not allege that defendants' acts were motivated by racial or gender considerations. Plaintiffs fail to mention the race or gender of the plaintiff candidates or that of their opponents in the city council election. Without more, the McGee plaintiffs plead no violation of constitutional right on the basis of race or sex discrimination.

■ Having failed to plead any cause of action for constitutional rights on the basis of discrimination, the McGee plaintiffs are left then to plead Equal Protection and Due Process constitutional claims. Again their complaint lacks supporting facts for any Equal Protection claim. Plaintiffs do not plead the race or sex of the plaintiffs, their opponents, and city council as a whole. The amended complaint cannot be the basis for a legal determination that defendants engaged in some invidious, arbitrary or irrational classification amounting to a constitutional violation. The Court's review of the amended complaint shows only one implicit classification. In plaintiffs' only classification, candidates, politicians and voters in Warrensville Heights are classified as supporters or opponents of the mayor's regime. Political factions are not a suspect class under the Fourteenth Amendment. The McGee plaintiffs plead no cause of action for unconstitutional violation of equal protection.

In looking to whether the McGee plaintiffs state a cause of action for unconstitutional denial of due process, the Court first examines whether plaintiffs state a cause of action for unconstitutional denial of procedural due process. In their complaint, the plaintiffs make no allegations of a procedural due process claim. Having found that the plaintiffs make no claim of denial of procedural due process, the Court looks to whether the plaintiffs were denied substantive due process.

Substantive due process protects "specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action." *Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir.1988).

■ Substantive due process "affords only those protections 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.'... It protects those interests, some yet to be enumerated, 'implicit in the concept of ordered liberty,' like personal choice in matters of marriage and the family." *Id.* (citations omitted).

■ The Court does not believe plaintiffs can make a viable claim that the privacy interests of political candidates is implicit in the concept of ordered liberty and should be

protected under substantive due process. The Supreme Court of the United States has held that there is no fundamental right to be a political candidate for office. *Clements v. Fashing,* 457 U.S. 957, 963, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982). Further, the fundamental rights associated with the right to privacy implicate family rather than civic matters. *See Littlejohn v. Rose,* 768 F.2d 765, 768 (6th Cir.1985), *cert. denied,* 475 U.S. 1045, 106 S.Ct. 1260, 89 L.Ed.2d 570 (1986). The Sixth Circuit has explained this tie as follows:

> ... the Supreme Court clearly [has] held that decisions regarding marital status are protected by the constitutional right to privacy:
>
>> Although "[t]he Constitution does not explicitly mention any right of privacy," the Court has recognized that one aspect of the "liberty" protected by the Due Process Clause of the Fourteenth Amendment is "a right of personal privacy, or a guarantee of certain areas or zones of privacy." This right of personal privacy includes "the interest in independence in making certain kinds of important decisions." While the outer limits of this aspect of privacy have not been marked by the Court, it is clear that among the decisions that an individual may make without unjustified government interference are personal decisions "relating to marriage"; procreation; contraception; ... and family relationships.

*Littlejohn,* 768 F.2d at 768 (citations omitted).

If plaintiffs do not allege denial of protections so rooted in the traditions and conscience of our people as to be ranked as fundamental, they must show that the defendants' conduct shocks the conscience. *Mertik v. Blalock,* 983 F.2d 1353, 1367–68 (6th Cir.1993). The Supreme Court suggests in two recent cases that executive action, such as the defendants here undertook, violates substantive due process only when it shocks the conscience in a constitutional sense. *County of Sacramento v. Lewis,* —— U.S.

——, 118 S.Ct. 1708, 1717, 140 L.Ed.2d 1043 (1998); *Collins v. Harker Heights,* 503 U.S. 115, 128, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

■ Candidates for election are public figures. If, as the Supreme Court has held, there is no fundamental right to be a candidate for public office, this Court finds plaintiffs cannot claim a right of constitutional dimension to not have embarrassing personal details disclosed by opponents or the news media. *See, e.g., New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (noting "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open").

The interest of these local candidates in their privacy does not rise to the level of a fundamental right. The Court is also of the view that the defendants' misuse of the police computer, while not excusable, falls far short of meeting some conscience shocking standard in our robust democracy.[16]

The Court does not believe the McGee or Wallace plaintiffs in these cases can make out a claim for a constitutional injury. Courts are reluctant to recognize a constitutional injury for unsuccessful candidates, *see Medina v. City of Osawatomie,* 992 F.Supp. 1269 (D.Kan.1998) (television ad warning residents some candidates for city council were convicted felons did not violate candidate's right to political association or right to be a candidate), or when disclosures that might suggest an invasion of privacy originate in public documents, *Cline v. Rogers,* 87 F.3d 176, 179 (6th Cir.1996) (no federal constitutional right to privacy in one's criminal record as arrest and conviction are matters of public record), *cert. denied,* —— U.S. ——, 117 S.Ct. 510, 136 L.Ed.2d 400 (1996).

In the instant cases, plaintiffs do not plead what false material or embarrassing disclosures defendants made. In making their complaint, plaintiffs do not allege how defendant's misuse of the LEADS police computer was the source of information used in the

16. "... the Due Process Clause of the Fourteenth Amendment ... does not transform every tort committed by a state actor into a constitutional

violation." *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 202, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

campaign.[17] Wallace simply pleads that defendants "were able to obtain confidential and/or privileged information pertaining to" her which "would have been difficult and/or expensive to gather through lawful means."[18]

A Rule 12(b)(6) motion is concerned only with the information contained in a well-pled complaint. The Court has limited its decision to the pleadings. The Court does note in passing, however, that the parties do discuss in their briefs the contents of a newspaper or broadsheet article not mentioned in either complaint. That article disclosed potentially embarrassing details about Wallace's personal finances. That information was a matter of public record. Further, defendants suggest the LEADS computer does not reach that type of information.

Therefore, the Court will grant the defendants' motions to dismiss in both cases the constitutional claims brought under § 1983. The Court does not believe these plaintiffs can make out a case showing they suffered a constitutional injury, even if, as local public figures seeking office, they can make out a state tort for invasion of privacy.

### VIII. State claims

Wallace's complaint makes state law claims brought under Ohio constitutional, statutory, and administrative law. Since the Court disposes of the only federal claim alleged in the plaintiff's complaint, only her state invasion of privacy claim is left to be litigated.

 The doctrine of pendent jurisdiction permits federal courts to entertain state claims which would otherwise lack subject matter jurisdiction so long as the state claim is "joined" with a related federal claim, the two claims arising out of the same event or connected series of events. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Because pendent jurisdiction is principally associated with federal question jurisdiction, where the existence of a federal claim supports jurisdiction of a pendent state claim, disposition of the federal claim allows the district court to exercise its discretion to allow any unresolved state claims to be heard in the state courts. 28 U.S.C. § 1367. The Court declines to exercise jurisdiction over the remaining state claim in 97–CV–2312, and dismisses Count II of the Wallace complaint without prejudice.

### IX. Conclusion

Accordingly, the Court will order case number 97–CV–162 and case number 97–CV–2312 consolidated. Further, the Court will grant the defendants' motions to dismiss the amended complaint in 97–CV–162 [Doc. 17], and their motion to dismiss the federal claim in the Wallace complaint in 97–CV–2312 [Doc. 8]. The remaining state claim in the Wallace litigation is dismissed without prejudice. Other pending motions are denied as moot.

IT IS SO ORDERED.

---

**17.** The Court is also at a loss to explain why the McGee candidate plaintiffs seek lost profits from the defendants under this § 1983 claim. *See* Amended complaint for 97–CV–162, at ¶¶ 52, 53.

**18.** *See* Amended complaint in 97–CV–2312, at ¶ 14.