**IRON WORKERS LOCAL UNION NO. 17 INSURANCE FUND AND ITS TRUSTEES, et al., Plaintiffs,**

v.

**PHILIP MORRIS INCORPORATED, et al.**

No. 1:97–CV–1422.

United States District Court, N.D. Ohio, Eastern Division.

Oct. 20, 1998.

---

Eben O. McNair, Timothy Joseph Gallagher, Schwarzwald & Rock, Jack Landskroner, Landskroner Law Firm, Cleveland, OH, John M. Broaddus, Robert J. Connerton, Connerton, Ray & Simon, Washington, DC, Michael C. Spencer, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, Patrick J. Coughlin, Frank J. Janecek, Jr., Scott H. Saham, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Lembhard G. Howell, Richard G. Piccioni, C. Cleveland Stockmeyer, Michael E. Withey, Paul L. Stritmatter, Philip G. Arnold, Kevin Coluccio, Keith L. Kessler, J. Murray Kleist, Stritmatter, Kessler, Whelan & Withey, George Kargianis, Kargianis, Watkins, Marler, Seattle, WA, Roger M. Adelman, Washington, DC, G. Robert Blakey, Notre Dame Law School, Notre Dame, IN, Einer R. Elhauge, Harvard Law School, Cambridge, MA, Jerry Kristal, Cherry Hill, NJ, Mitchell M. Breit, Karen J.

Sabine, Breit & Sabine, New York City, for Plaintiffs.

Lawrence R. Desideri, Thomas J. Frederick, Dan K. Webb, Kevin J. Narko, Bradley E. Lerman, Winston & Strawn, Chicago, IL, Hugh E. McKay, Robert D. Anderle, Porter, Wright, Morris & Arthur, Roger Allen Hipp, Jones, Day, Reavis & Pogue, Cleveland, OH, Matthew A. Kairis, Jeffrey J. Jones, Melanie S. Fahey, Jones, Day, Reavis & Pogue, Columbus, OH, Daniel F. Kolb, Davis, Polk & Wardwell, New York City, Phillip J. Campanella, Calfee, Halter & Griswold, Cleveland, OH, Kenneth N. Bass, Paul Taylor, Kirkland & Ellis, Washington, DC, John Winship Read, Amanda Martinsek, Vorys, Sater, Seymour & Pease, Cleveland, OH, Percy Squire, Thomas D. Lambros, Lloyd Pierre–Louis, Bricker & Eckler, Columbus, OH, Mark G. Cunha, Patrick D. Bonner, Jr., Randall Rainer, Simpson, Thacher & Bartlett, New York City, Craig E. Gustafson, Gary R. Long, William J. Crampton, Bruce R. Tepekian, Shook, Hardy & Bacon, Kansas City, MO, Samuel R. Martillotta, Mansour, Gavin, Gerlack & Manos, Patrick M. McLaughlin, John F. McCaffrey, McLaughlin & Caffrey, Cleveland, OH, Thomas P. Meaney, Jr., Kenneth J. Walsh, Tyler Lee Mathews, McDonald, Hopkins, Burke & Haber, Cleveland, OH, Marc E. Kasowitz, Marie V. Santacroce, Michael M. Fay, Julie R. Fischer, Marie V. Santocroce, Kasowitz, Benson, Torres & Friedman, New York City, Steven D. Bell, Ulmer & Berne, David J. Hooker, Thomas J. Collin, Robert Francis Ware, Jr., Thompson, Hine & Flory, Cleveland, OH, Steven Klugman, Harry Zirlin, Anne E. Cohen, Debevoise & Plimpton, New York City, Charna E. Sherman, David J. Michalski, James M. Drozdowski, Kathleen Balthrop Havener, Hahn, Loeser & Parks, Susan V. Belanger, Arter & Hadden, Cleveland, OH, John P. Gartland, Arter & Hadden, Columbus, OH, Michael C. Lasky, Davis & Gilbert, New York City, Hill & Knowlton, Inc., Timothy D. Johnson, Forrest A. Norman, III, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, for Defendants.

**OPINION AND ORDER**

GWIN, District Judge.

On July 10, 1998, Plaintiff Funds filed a motion to certify this cause as a class action pursuant to Fed.R.Civ.P. 23 [Doc. 153]. In their motion, Plaintiff Funds first say the requirements for class certification under Rule 23(a) are met because there are a sufficient number of class members to make joinder impracticable, that Plaintiff Funds' claims present issues common to the class, that their claims are typical of those of the class as a whole, and that Plaintiff Funds are adequate class representatives.

Plaintiff Funds further say that the requirements under Rule 23(b)(3) are satisfied because common issues of law or fact predominate over individual issues. In this regard, Plaintiff Funds contend their claims against the defendants arise out of the defendants' common course of misconduct, and that each trust fund class member suffered injury under the same course of conduct and in the same manner. Plaintiff Funds also contend that administering this case as a class action suit is a superior method of managing and resolving this dispute.

In ruling on Plaintiff Funds' motion to certify this cause as a class action, the Court conducts a "rigorous analysis" of whether this action is suitable for class certification under Fed.R.Civ.P. 23. Having made this review, the Court finds that this case is suitable for class certification and that this Court should grant an order for class certification.

## I. History of this Case

Plaintiffs are certain trusts organized to provide health-related benefits to workers and their families.[1] The plaintiffs are nonprofit, union-sponsored tax-exempt trusts organized under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* The trusts provide medical or hospital care benefits to participants and

---

**1.** Plaintiffs are Iron Workers Local Union No. 17 Insurance Fund, IBEW Local No. 38 Health & Welfare Fund, Ohio Laborers' District Council–Ohio Contractors' Association Insurance Fund, Dealers–Unions Insurance Fund, Local 47 Welfare Fund No. 1, Toledo Electrical Welfare Fund and their trustees.

their beneficiaries as employee retirement income security programs.

On May 20, 1997, Plaintiff Funds brought this action against tobacco-related entities.[2] Plaintiffs allege that, since about 1953, the defendants illegally shifted the large health care costs of smoking onto plaintiffs, proposed class members, and other health care payors. Plaintiff Funds contend that the defendants expected, foresaw, and planned this shift of expenses. Plaintiffs further allege that as the direct result of the defendants' wrongdoing, plaintiffs and other similar trust funds had to make substantial expenditures to pay for treatment of smoking-related illnesses and addiction.

In their First Amended Complaint, Plaintiff Funds stated eighteen (18) counts against the defendants. To date, five (5) counts remain for adjudication.[3] In Count I of the Amended Complaint, plaintiffs make claim under the Federal Racketeer Influenced and Corrupt Organizations Act of 1970, also known as RICO, 18 U.S.C. § 1961 *et seq.* In Count XIV, plaintiffs make claim under the Ohio equivalent of RICO, the Ohio Pattern of Corrupt Activity Act ("Ohio Corrupt Activities Act"), Ohio Rev.Code §§ 2923.31 *et seq.* In Counts IV (federal antitrust) and X (state antitrust), the plaintiffs make two antitrust claims.[4] In Count XI of the Amended Complaint, plaintiffs make a state law claim of civil conspiracy.

In this case, Plaintiff Funds seek to recover costs incurred as a result of the defendants' alleged wrongful conduct. The Funds characterize their damages as economic losses arising from the "diminishment and expenditure of Fund assets" paid to provide medical treatment for tobacco-related illnesses. Plaintiff Funds also seek treble and twofold damages on their federal and state RICO and antitrust claims, injunctive and declaratory relief, including disgorgement, as well as restitution and punitive damages.

On September 23, 1998, by memorandum opinion and order, this Court denied the defendants' motion to dismiss this cause under Fed.R.Civ.P. 12(b)(7) for failure to join necessary parties [Docs. 249, 250]. In a memorandum opinion and order entered September 14, 1998, this Court denied motions

---

**2.** Defendants are Philip Morris, Inc.; RJR Nabisco, Inc.; RJR Nabisco Holdings Corp.; R.J. Reynolds Tobacco Co.; Brown & Williamson Tobacco Corp.; Lorillard Tobacco Co.; American Tobacco Co.; Liggett Group, Inc.; United States Tobacco Sales and Marketing Co., Inc.; The Council for Tobacco Research—U.S.A., Inc.; The Tobacco Institute, Inc.; Hill & Knowlton, Inc.; and British–American Tobacco Co. Ltd. ("BAT-Co.").

On September 8, 1998, plaintiffs voluntarily dismissed The Smokeless Tobacco Council, Inc. as a defendant in this case [Doc. 237]. Further, by order entered September 14, 1998, this Court dismissed Defendant B.A.T. Industries PLC as a defendant in this case [Doc. 238].

**3.** Also on September 8, 1998, plaintiffs voluntarily dismissed without prejudice certain claims against the defendants. These include Count V (fraud), Count IX (unjust enrichment), and Count XII (violation of the Ohio Deceptive Trade Practices Act). Plaintiffs earlier withdrew Count VIII (breach of warranty), Count XIII (violation of ERISA), Count XVII (strict product liability), and Count XVIII (negligence). [See Doc. 237].

On June 22, 1998, Plaintiff Funds also voluntarily dismissed certain claims based upon the "regulatory enterprise." These claims include Count II (violation of federal RICO, 18 U.S.C. §§ 1962(a) and (d)); Count III (violation of federal RICO, 18 U.S.C. §§ 1962(b) and (d)); Count XV (violation of Ohio RICO, § 2923.32(A)(3)); and Count XVI (violation of Ohio RICO, § 2923.32(A)(2)). *See* Plaintiffs' Statement Regarding Voluntary Dismissal of Certain Causes of Action [Doc. 134]. Further, by order dated September 10, 1998, the Court dismissed Counts VI (intentional breach of special duty) and Count VII (negligent breach of special duty) [Doc. 234].

In summary, Counts II, III, V, VI, VII, VIII, IX, XII, XIII, XV, XVI, XVII, and XVIII of the Amended Complaint either have been withdrawn or dismissed. Accordingly, the five remaining claims in this case are: Count I (federal RICO, 18 U.S.C. § 1962(c) and (d), except against Defendants Council for Tobacco Research, The Tobacco Institute, and Hill & Knowlton); Count IV (federal antitrust, 15 U.S.C. § 1, against all remaining defendants); Count X (state antitrust, Ohio Rev.Code § 1331 *et seq.,* against all remaining defendants); Count XI (civil conspiracy against all remaining defendants); and Count XIV (Ohio RICO, Ohio Rev.Code § 2923.31 *et seq.,* except against Defendants Council for Tobacco Research, The Tobacco Institute, and Hill & Knowlton).

**4.** Plaintiffs' antitrust claims include one federal claim for violations of the Sherman Act, 15 U.S.C. § 1 *et seq.,* and one state law claim for

by Defendants The Tobacco Council, RJR Nabisco Holdings, and RJR Nabisco, Inc. to dismiss this cause pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction [Doc. 238].[5] Further, in a memorandum opinion and order entered September 10, 1998, this Court generally denied motions by the defendants to dismiss this case pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state claims upon which relief could be granted [Doc. 234]. Plaintiff Funds now move to certify this cause as a class action pursuant to Fed. R.Civ.P. 23.

The representative plaintiffs are six jointly-administered, multi-employer health and welfare trust funds located in the state of Ohio. These plaintiffs seek to certify a class consisting of approximately 100 other similarly-situated health and welfare trusts, all in Ohio.[6] Plaintiff Funds allege these other trusts have the same legal structure, method of operation, and purpose to provide health benefits to their participants and beneficiaries. Plaintiffs also say the proposed trust class members are managed by trustees who share a common fiduciary obligation to the funds and their respective participants. The plaintiffs allege all these class members have been damaged in a like fashion.

In considering Plaintiff Funds' motion for class certification, the Court considers plaintiffs' allegations that the class, as a whole, suffered measurable, economic damage to their business and property because of the defendants' conduct. In seeking class treatment on the remaining claims, Plaintiff Funds contend that certifying this action is appropriate because legal and factual issues common to the proposed class predominate.[7]

Plaintiff Funds also maintain that they are able to fairly and adequately represent the interests of the class.[8] Specifically, the representative plaintiff group has larger and smaller funds whose claims against the defendants are said to be typical of the injury suffered by the class as a whole. Further, Plaintiff Funds say that counsel well qualified in class action cases and complex litigation represent them. Plaintiff Funds urge the Court to certify this as a class action

violations of the Valentine Act, Ohio Rev.Code. § 1331.01 et seq.

5. In that same opinion and order, the Court granted the motion to dismiss by Defendant B.A.T. Industries PLC, as the Court found it lacked personal jurisdiction over this foreign corporation.

6. Ohio-based multi-employer trust funds, by one estimate, pay health care costs of approximately 450,000 persons. The proposed class consists of all jointly-administered, multi-employer health and welfare trusts in Ohio and their respective trustees. The trust funds serve union members in industries, such as transportation and the building trades, where a unionist might have a series of employers throughout his or her career. A list including 114 potential class members is found at Doc. 153, Affidavit of Michael E. Withey, & exh. 1.

7. Plaintiff Funds suggest this case is replete with issues of law and fact common to the class as a whole. These issues include, but are not limited to, the following:
   a. Did defendants conspire to shift massive, foreseen health care costs of smoking onto health care payers?
   b. Are nicotine cigarettes disease-causing and addictive?
   c. Did each defendant know that cigarettes are harmful and addictive, and that cigarettes cause diseases such as lung cancer, emphysema, and heart disease?
   d. Did the defendants hide knowledge and research into the addictive and harmful quality of their products, and use propaganda falsely presented as independent scientific research?
   e. Did the defendants agree not to compete based upon claims of health?
   f. Did the defendants conspire to suppress the development and marketing of safer or less hazardous products, or information as to safe or unsafe products, or do so for purposes of avoiding or defeating litigation and avoiding paying for the medical care expenses of addicted smokers?
   g. Did the defendants foist upon Plaintiff Funds and other health care payers the costs of health care related to smoking?
   h. Did the defendants injure Plaintiff Funds in their business or property in shifting the costs associated with health care by placing the burden of providing health care costs for smoking-related illnesses upon them, or by preventing them from providing better information or better addiction-treatment programs of supplies?
   i. Does the defendants' conduct constitute violations of federal and state RICO and antitrust laws?
   j. Did the defendants engage in a civil conspiracy?
   See Plaintiff Funds' memorandum at Doc. 153, at 17–18 n. 17.

8. See id. at 17–19.

because a class action is a superior method of trying this case. The Funds suggest that class certification provides for the most economical and effective use of judicial resources.

The defendants oppose class treatment and ask the Court to deny Plaintiff Funds' motion for class certification. In opposing the plaintiffs' motion, the defendants say the class cannot be certified because individual legal and factual issues will predominate and overwhelm any trial of this case.

Central to their opposition, the defendants argue that to prevail, plaintiffs must show "causation." That is, the Funds must prove that their damages were the proximate result of the defendants' alleged wrongful conduct. Importantly, the defendants argue that to prove causation, the Funds need to show that each trust relied to its detriment on either misrepresentations or omissions by the defendants. Defendants urge the representative plaintiffs cannot make such a showing absent testimony from individual fund trustees, and possibly trust fund participants and beneficiaries. The defendants say that evidence from representative plaintiffs will not have any "probative value in proving proximate cause on the claims of the 100 + absent trusts." [9]

Further, the defendants challenge the representative plaintiffs' use of a statistical "damage model" to establish class-wide damages. Defendants suggest that use of such a model will not obviate the need for trust-specific evidence.

The defendants also contend that trial of this case as a class action would be unmanageable, unconstitutional, and otherwise fail the "superiority" requirement under Rule 23(b). To this extent, the defendants challenge the plaintiffs' proposed trial plan for failure to describe how "significant proximate cause issues can be resolved for absent class members without trust-specific, much less participant and beneficiary-specific, evidence." [10] The defendants suggest that Plaintiff Funds' proposed class plan ultimately would disintegrate into complex, individual trials for each absent trust.[11]

Finally, the defendants argue that this case is novel. Here, the defendants suggest that because no other federal trial court has yet to have a similar merits trial, this Court should decline to certify a class until such a time when there has been "substantial experience with actual trials and decisions in individual actions." [12]

Considering the facts of this case and the arguments of counsel, the Court decides whether this cause is suitable for class certification under Fed.R.Civ.P. 23.

## II. Class Certification

In ruling on the plaintiffs' motion for class certification, the Court determines whether the Plaintiff Funds establish the requisite elements for class status under Fed.R.Civ.P. 23.[13] The party seeking class certification

9. *See* Defendants' memorandum opposing class certification. Doc. 186, at 7.

10. Defendants' memorandum at Doc. 186, at 29.

11. *See* Defendants' memorandum at Doc. 186, at 29–30. The defendants rely on *Malcolm v. National Gypsum Co.*, 995 F.2d 346 (2nd Cir.1993), to support their proposition that a single jury would be unable to remember and reliably distinguish between the evidence presented by numerous plaintiffs and defendants throughout the course of a lengthy trial. In *Malcolm*, the Second Circuit states:

"The systemic urge to aggregate litigation must not be allowed to trump our dedication to individual justice, and we must take care that each individual plaintiffs—and defendant's—cause not be lost in the shadow of towering mass litigation."

*Id.* at 350 (quoting *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 853 (2d Cir.1992)).

12. *See* Doc. 186, at 32 (quoting Advisory Committee on Civil Rules, Proposed Revision of the Class Action Rule, Note to Section 23(b)(3) (1996)).

13. Fed.R.Civ.P. 23 provides in pertinent part:

Rule 23. Class Actions
(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

bears the burden of proof. *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *In re American Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir.1996).

As a matter of law, the Supreme Court of the United States requires district courts to conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. *Falcon,* 457 U.S. at 161, 102 S.Ct. 2364.[14] The Sixth Circuit has adopted this mandate. *See Sprague v. General Motors Corp.,* 133 F.3d 388, 397 (6th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 2312, 141 L.Ed.2d 170 (1998). In *Sprague,* the Sixth Circuit stated that "a district court may not certify any class without 'rigorous analysis' of the requirements of Rule 23." *Id.* (quoting *Falcon,* 457 U.S. at 161, 102 S.Ct. 2364). This Court evaluates whether Plaintiff Funds satisfy the requirements for class certification under Rule 23(a) and (b).

### A. Rule 23(a)

Rule 23(a) sets four prerequisites to class certification: (1) the class must be so numerous that "joinder of all members is impracticable"; (2) there must be "questions of law or fact common to the class"; (3) the claims of the representative party must be "typical" of those of the class; and (4) the representative party must "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

The commonality, typicality, and adequacy-of-representation requirements are related. Each requires a judge to consider whether the claims of the named plaintiff are sufficiently similar to the claims of the absent class members to make the plaintiff an adequate representative of the proposed class'

interests. *See Falcon,* 457 U.S. at 157–58 n. 13, 102 S.Ct. 2364. The Court decides whether Plaintiff Funds' satisfy each of these requirements.

### 1. Numerosity

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." There is no strict numerical test for determining impracticability of joinder, nor is there a magic number for determining when too many parties make joinder impracticable. *Senter v. General Motors Corp.,* 532 F.2d 511, 523 n. 24 (6th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). Rather, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. of the Northwest, Inc. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).

In determining whether a class is so numerous that joinder of all members is impracticable, courts must consider the "practicability" of joinder. The practicability of joinder depends on the size of class, the ease of identifying its members, the ability to make service, and their geographic dispersion. *In re American Med. Sys., Inc.,* 75 F.3d at 1079; *Alexander Grant & Co. v. McAlister,* 116 F.R.D. 583, 586–87 (S.D.Ohio 1987). In *In re American Med. Sys., Inc.,* the Sixth Circuit stated " '[t]he reason for [the impracticability] requirement is obvious. Only when joinder is impracticable is there a need for a class action device.' " 75 F.3d at 1079 (quoting 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 3.01, at 3–4 (3d ed.1992)).[15]

Fed.R.Civ.P. 23(a).

**14.** *See also In re American Med. Sys., Inc.,* 75 F.3d at 1078–79: *Kutschbach v. Davies,* 885 F.Supp. 1079 (S.D.Ohio 1995) (proposed class representative must establish that all requirements for certification of class are satisfied with respect to putative class for certification to be proper); *Jackshaw Pontiac, Inc. v. Cleveland Press Pub. Co.,* 102 F.R.D. 183, 187 (N.D.Ohio 1984).

**15.** Joinder is generally considered more practicable when all members of the class are from the

same geographic area. Where class members may be easily identified, joinder is also more practicable. *O'Neil v. Appel,* 165 F.R.D. 479, 489–90 (W.D.Mich.1996) (the party seeking class certification carries the burden to identify potential members of the class); *Schreiber v. National Collegiate Athletic Ass'n,* 167 F.R.D. 169, 173–74 (D.Kan.1996) (the party seeking certification need not show the exact size of the class). As a general rule, the plaintiff class should be so numerous so as to make it impracticable to bring them all before the court.

■ However, "impracticable" does not mean "impossible." Rather, proposed class representatives need only show that joining all members of the potential class is extremely difficult or inconvenient. *See, e.g., Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir.1964). Numbers alone are not determinative of this question. *Alexander Grant & Co.*, 116 F.R.D. at 586.[16]

■ In the instant case, the representative plaintiffs are six Ohio trust funds organized to provide health-related benefits to workers and their families. Plaintiff Funds seek to certify a class consisting of approximately 100 other similar jointly-administered, multi-employer health and welfare trust funds in Ohio.

In arguing that this case should be certified as a class, Plaintiff Funds say that 100 potential class members sufficiently satisfy the numerosity requirement under Rule 23(a)(1). For support, the Funds reference two similar tobacco cases where the federal district court considered classes comprising fewer members: *Northwest Laborers–Employers Health & Security Trust Fund, et al., v. Philip Morris, Inc., et al.*, No. C97–849WD (W.D.Wash. Dec. 24, 1997); and *Oregon Laborers–Employer Health & Welfare Trust Fund, et al. v. Philip Morris, Inc., et al.*, No. CV–97–1051–ST (D.Or. Jun. 1, 1998). Although these cases raise issues slightly different from those presented here, the Court finds the discussions on class certification helpful.

In the first case, *Northwest Laborers,* District Judge William Dwyer certified a class of approximately 55 nonparty trust funds. In the second case, *Oregon Laborers,* Magistrate Judge Janice Stewart similarly found that joinder of approximately 50 proposed class member trust funds was impracticable.

In the present case, Plaintiff Funds all are located within the state of Ohio. These funds are operated or managed by trustees. Because the funds and their respective trustees would be parties to this action, the total number of potential class plaintiffs would be great. In this regard, joining approximately 100 nonparties, despite all being located in Ohio, would be difficult and inconvenient.[17]

Considering these factors, the Court finds that Plaintiff Funds' proposed class of approximately 100 nonmember plaintiffs is so numerous that their joinder would be impracticable. Accordingly, Plaintiff Funds sufficiently have satisfied the numerosity requirement of Rule 23(a)(1). Having decided this issue, the Court next evaluates whether there are questions of fact or law sufficient to show commonality under Rule 23(a)(2).

### 2. Commonality

Under Fed.R.Civ.P. 23(a)(2), a plaintiff must show "questions of law or fact common to the class." The Supreme Court has defined commonality as requiring that "a class representative ... be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Falcon,* 457 U.S. at 156, 102 S.Ct. 2364 (quoting *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)).

The Sixth Circuit set forth a similar definition of "commonality" in *Sprague,* 133 F.3d at 397. There, the Court stated that the commonality requirement "deals with shared questions of law or fact.... What we are looking for is a common issue the resolution of which will advance the litigation." *Id.* *See also* Newberg & Conte, *supra,* § 3.10, at 48–51 ("When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected.").

---

16. *See also In re Telectronics Pacing Sys., Inc.* 172 F.R.D. 271, 279 (S.D.Ohio 1997) (stating joinder need not be impossible, just that joinder would result in "litigational hardship or inconvenience"); *Thrope v. State of Ohio,* 173 F.R.D. 483, 487 (S.D.Ohio 1997) (stating joinder need only be difficult or inconvenient).

17. *See also Cottrell v. Lopeman,* 119 F.R.D. 651, 654 (S.D.Ohio 1987) (finding 52 members satisfies Rule 23(a)(1)): *Thonen v. McNeil–Akron, Inc.,* 661 F.Supp. 1271, 1273 (N.D.Ohio 1986) (79 members); *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 105 F.R.D. 506, 508 (S.D.Ohio 1985) (subclasses with 87 and 23 members).

■ Considering these standards, a plaintiff generally will satisfy the commonality requirement by showing a "common nucleus of operative fact." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992), *cert. denied*, 506 U.S. 1051, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993). In this regard, there must be at least one question of law or fact common to the class. *See Sprague*, 133 F.3d at 397. A class action will not be defeated solely because of some factual variations among class members' grievances. *See Patterson v. General Motors Corp.*, 631 F.2d 476, 481 (7th Cir.1980), *cert. denied*, 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981).

■ In the instant case, Plaintiff Funds adequately show at least one question of law or fact common to the class. Plaintiff Funds also show a commonality of interest with the class. Here, Plaintiff Funds give evidence that members of the proposed trust fund class were similarly damaged by the defendants' conduct. Plaintiff Funds suggest that for a period of decades, the defendants engaged in a common course of conduct to purposefully and illegally shift the burden of health care costs. In doing so, plaintiffs say that they, and other trust funds, were required to make expenditures from trust fund assets to provide benefits for tobacco-related illnesses. These expenditures, although varying in sum, are likewise common to the class. As related, the plaintiffs contend that no proposed class member was singled out by the defendants and that each trust fund was subjected to a scheme or course of conduct that is common to the class as a whole.

Because the test for commonality is qualitative rather than quantitative, and because "there need only be one question common to the class," the Court concludes that the representative plaintiffs satisfy the commonality requirement under Rule 23(a)(2). *Sprague*, 133 F.3d at 397, 398 n. 8; *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir.1997). The Court finds that the resolution of the common issues and claims discussed above will advance third-party health care payor-tobacco litigation. *Sprague*, 133 F.3d at 397. Having decided this issue, the Court turns to the typicality requirement under Rule 23(a)(3).

### 3. Typicality

■ Under Fed.R.Civ.P. 23(a)(3), a plaintiff seeking class certification must show that his or her claims are typical of other potential class claims. Rule 23(a)(3) exists to ensure that the claims of the representative party are similar enough to the claims of the class so that the named plaintiff will adequately represent all members of the class. *See Hiatt v. County of Adams, Ohio*, 155 F.R.D. 605, 609 (S.D.Ohio 1994) (any inquiry into typicality under Rule 23(a)(3) requires a comparison of the claims or defenses of the representative with the claims or defenses of the class).

In *Sprague*, the Sixth Circuit described the typicality requirement as follows:

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.... A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members.

*Sprague*, 133 F.3d at 399 (citing 1 Newberg and Conte, *supra*, § 3–13, at 3–75, 76 (internal quotations omitted)).[18]

In this case, the representative plaintiffs define the proposed class as other jointly-administered, multi-employer health and welfare trusts throughout Ohio who each paid increased health care costs for smoking-relating diseases. Plaintiff Funds say that each trust fund was detrimentally affected by the

---

18. *See also Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974) (to have standing to sue as a class representative, it is essential that plaintiff be a party of that class which means he must possess the same interest and suffer the same injury shared by all members of class he represents); *Senter*, 532 F.2d at 523–24 (to be typical, a representative's claim need not always involve the same facts or law provided there is a common element of fact or law).

defendants' common scheme to shift the increased costs of health care onto the funds.

To support their assertion that their claims and interest in this case are "typical" of the class as a whole, Plaintiff Funds first suggest that the legal and remedial theories supporting their claims are the same for the proposed class. The Funds also challenge the defendants' conduct as collective in nature—that is, the Funds suggest that the defendants, over a period of decades, intentionally shifted health care costs to trust funds to avoid having to absorb the increased costs. In doing so, the plaintiffs urge that the defendants did not discriminate among the funds and did not single out any class members for special treatment or special misrepresentations.[19]

Further, although the plaintiffs acknowledge that there will be differences in the amount of damages to each class member, the Funds urge this is irrelevant since it is the defendants' alleged overall scheme and course of purported wrongful conduct that is at issue, not the potential damage amount that is recoverable by each fund.

A court's review of any individual claim requires an independent examination of the facts and circumstances supporting that particular member's relationship with the defendant. *See Sprague*, 133 F.3d at 399. Accordingly, to thoroughly evaluate whether Plaintiff Funds' claims are typical of the class, the Court asks whether the representative plaintiffs, in pursing their own claims, will advance the claims and interests of the class. Here, Plaintiff Funds must show that despite any variations among the class, they will be able to prove their own claims as well as the claims of the class. *Id.*[20]

Although the Court agrees that each trust fund inevitably functions somewhat differently, the Court disagrees with the extent to which the defendants say this affects typicality. As discussed, the named plaintiffs seek to represent other health and welfare trusts that share a common obligation to provide medical and health benefits to their participants. These trusts supposedly expended certain funds to accomplish this goal. These expenditures satisfied each fund's common fiduciary obligation to provide benefits for smoking-related illnesses. To this end, the Court is satisfied that the named plaintiffs are typical of the proposed class in this action.

In challenging the plaintiffs' claims of typicality, defendants argue that Plaintiff Funds must show reliance in the RICO and Ohio Corrupt Activity Act claims. Defendants say that reliance is a necessary element in two regards. First, defendants say reliance is an element necessary to mail fraud, a predicate act to Plaintiff Funds' RICO claims. Second, defendants say that this Court's determination of proximate causation will require determination of each plaintiff's reliance.[21]

Defendants thus argue that Plaintiff Funds cannot show typicality because plaintiffs must show a statement or omission, justifi-

**19.** *See* Plaintiff Funds' memorandum supporting class certification at Doc. 153, at 18–20.

**20.** As stated by the Sixth Circuit in *Sprague,* "[t]he premise of the typicality requirement is *simply stated: as goes the claim of the named plaintiff, so go the claims of the class.*" 133 F.3d at 399.

**21.** Defendants argue:
Each trustee's knowledge of smoking and health issues, and the actions each trust took in light of that knowledge, will have a direct bearing on the proximate cause analysis. The testimony of the six named plaintiffs on proximate cause issues is absolutely meaningless in resolving these core issues for the 100+ putative absent class members....
[A]ll of plaintiffs' claims are predicated upon allegations to the effect that the tobacco industry concealed information and made numerous

fraudulent statements on smoking and health issues. It cannot reasonably be disputed that evidence presented by present and former trustees of the named plaintiffs as to their subjective knowledge (or lack thereof) on smoking and health issues does nothing to establish the claims of putative absent class members....
The present and former trustees of each trust must also present evidence demonstrating knowledge of alleged misrepresentations. The trustees must describe *with particularity* the substance of each alleged misrepresentation, identify which defendant made the statement and when the statement was made, and describe what portion of the statement the trust claims is false and misleading.
Doc. 186, at 8, 9, and 11 (footnote omitted) (emphasis in original).

able reliance and damages. Because certain fund trustees have testified indicating unawareness of defendants' representations and because certain trustees have testified indicating that they would not have changed their decisions if they had knowledge of defendants' purported misrepresentations, the defendants say plaintiffs' claims are not typical. The Court examines this issue in the next subsections.

But as to Plaintiff Funds' antitrust claims, knowledge, consent or reliance are not defenses and do not affect proximate cause. Therefore, for purposes of evaluating plaintiffs' antitrust claims, statements and justifiable reliance are not relevant, and do not limit the availability of class certification.

### a. Reliance in Ohio Corrupt Activity Act claim

■ Plaintiffs also make claim under the Ohio Corrupt Activity Act, Ohio Rev.Code § 2923.34. Under that provision, a party can bring a civil action against a party who has engaged in a pattern of corrupt activity.[22] Under Ohio law,

(I) "Corrupt activity" means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in any of the following:

(1) Conduct defined as "racketeering activity" under the "Organized Crime Control Act of 1970, . . ."

Ohio Rev.Code § 2923.31. Under the Ohio Corrupt Activity Act, a party can bring a civil action for conduct that would constitute a *criminal* act under the federal RICO statute.

Interpreting the federal *criminal* RICO act, the Sixth Circuit has held that reliance is not an element of mail or wire fraud. In *United States v. Merklinger,* 16 F.3d 670 (6th Cir.1994), the Sixth Circuit described the elements of mail fraud:

To support a conviction for mail fraud, 18 U.S.C. § 1341, the government must prove: (1) the existence of a scheme to defraud, (2) which involves the use of the mail, or of wire transmissions, (3) for the purpose of executing the scheme. *United States v. Castile,* 795 F.2d 1273, 1277–78 (6th Cir.1986). To support a conviction for wire fraud, 18 U.S.C. § 1343, the government must prove: (1) the existence of a scheme to defraud, (2) use of wire communications in furtherance of the scheme, and (3) that the scheme was intended to deprive a victim of money and property. *United States v. Ames Sintering Co.,* 927 F.2d 232, 234 (6th Cir.1990).

Reliance is not an element of either of these types of fraud. Indeed, Defendant expressly recognizes that the mail and wire fraud statutes do not require proof that the intended victim was actually defrauded; the actual success of a scheme to defraud is not an element of either § 1341 or § 1343. *Ames Sintering Co.,* 927 F.2d at 235; *United States v. Hathaway,* 798 F.2d 902, 912 (6th Cir.1986); *United States v. Goodpaster,* 769 F.2d 374, 378–79 (6th Cir.), *cert. denied,* 474 U.S. 983, 106 S.Ct. 391, 88 L.Ed.2d 343 (1985). This implies that reliance is not an element of mail or wire fraud.

*Id.* at 678.

To restate, a party can bring a civil action under the Ohio Corrupt Activity Act based upon predicate acts of criminal mail fraud. Under *Merklinger,* reliance is not an essential element of mail fraud or a *criminal* RICO action. Therefore, defendants' plaintiffs' justifiable reliance are not relevant for purposes of the plaintiffs' Ohio Corrupt Ac-

---

**22.** Under Ohio Rev.Code § 2923.31(E) a "pattern of corrupt activity" means:

". . . two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.

"At least one of the incidents forming the pattern shall occur on or after January 1, 1986. Unless any incident was an aggravated murder or murder, the last of the incidents forming the pattern shall occur within six years after the commission of any prior incident forming the pattern, excluding any period of imprisonment served by any person engaging in the corrupt activity. . . ."

tivity Act claims, and do not limit the availability of class certification.[23]

Defendants say the Plaintiff Funds are not typical of the proposed class claims under the federal *civil* RICO because the Plaintiff Funds are unable to show an omission or misrepresentation and justifiable reliance. The Court now turns to that question.

### b. Whether reliance needs to be shown in federal RICO claim for mail or wire fraud

■ Defendants argue that Plaintiff Funds need to show reliance to support the predicate act of mail or wire fraud under the RICO claim. Defendants argue that many of the plaintiffs' claims require proof of reliance, where the predicate acts plaintiffs have alleged under RICO·is based on fraud. They cite *Grantham and Mann, Inc. v. American Safety Prods.*, 831 F.2d 596, 606 (6th Cir. 1987).[24]

The controlling authority is somewhat unclear over whether reliance is a necessary element of a civil RICO action founded upon predicate acts of mail fraud. The mail fraud statute provides in pertinent part:

> Whoever, having devised or intending to devise *any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises,* .... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, .... shall be fined under this title or imprisoned not more than five years, or both. If the violation affects a financial institution, such person shall be

fined not more than $1,000,000 or imprisoned not more than 30 years, or both. 18 U.S.C. § 1341 (emphasis added).

In *Durland v. United States*, 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709 (1896), the Supreme Court examined whether the mail fraud statute extended beyond common law fraud, or false pretenses, to a broader scope of conduct.[25] In *Durland,* the defendant promised future bond payments in exchange for installment payments. Durland defended on the ground that fraud required misrepresentation of a *past fact. Id.* at 312, 16 S.Ct. 508. In rejecting Durland's arguments, the Court held that the mail fraud statute was broader than common law fraud, or false pretenses. The *Durland* Court stated:

> It was with the purpose of protecting the public against all such intentional efforts to despoil, and to prevent the post office from being used to carry them into effect, that this statute was passed; and it would strip it of valh·ಲ to confine it to such cases as disclose an actual misrepresentation as to some existing fact, and exclude those **in which is** only the allurement of a specious and glittering promise.

*Durland,* 161 U.S. at 314, 16 S.Ct. 508. The *Durland* Court held that a scheme to defraud under the statute and common law fraud were separate concepts.

In *Carpenter v. United States*, 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), the Court sustained the criminal convictions of a financial newspaper reporter and stockbroker. The Court found the defendants defrauded the *Wall Street Journal* by utilizing confidential information regarding securities

---

**23.** The Court notes that under state decisional law, the element of reliance will not defeat class certification. In *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 694 N.E.2d 442 (1998), the Supreme Court of Ohio states: "[C]lass action treatment is appropriate where the claims arise from standardized forms or routinized procedures, notwithstanding the need to prove reliance." *Id.* at 84, 694 N.E.2d 442 (citations omitted).

In *Hamilton,* the Ohio Supreme Court distinguished its earlier ruling in *Schmidt v. Avco Corp.*, 15 Ohio St.3d 310, 473 N.E.2d 822 (1984) (denying class certification because individual considerations were necessary in the context of promissory estoppel claim). The state's high court said "*Schmidt* did not purport to establish

a rule that any claim containing a necessary element of reliance is *ipso facto* excluded from class action treatment. The drafters of Civ.R. 23 could easily have expressed such an exclusion had that been their intent." *Id.* at 83, 694 N.E.2d 442.

**24.** As previously described, the Court finds that reliance does not preclude class certification under Ohio law.

**25.** In discussing this issue, the Court credits the analysis of Courtney Chetty Genco, Note, *What Happened to Durland?: Mail Fraud, RICO and Justifiable Reliance*, 68 Notre Dame L.Rev. 333 (1992).

transactions which would be discussed in upcoming newspaper articles. The Court found that the newspaper had been defrauded even though the paper did not suffer apparent monetary loss. Reliance was not shown. The *Carpenter* Court described the elements of a scheme to defraud to include:

> [T]he words "to defraud" in the mail fraud statute have the "common understanding" of " 'wronging one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation of something of value by trick, deceit, chicane or overreaching.' " The concept of "fraud" includes the act of embezzlement, which is " 'the fraudulent appropriation to one's own use of the money or goods entrusted to one's care by another.' "

*Id.* at 27, 108 S.Ct. 316 (citations omitted).

A criminal RICO action may be based on a predicate act of fraud broader than common law fraud or common law deceit. In *Chisolm v. TranSouth Fin. Corp.,* 95 F.3d 331 (4th Cir.1996), the court described this:

> The elements of mail fraud are (1) a scheme disclosing an intent to defraud, and (2) the use of the mails in furtherance of the scheme. *See Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954). Although the crime of common law fraud requires the intended victim to have justifiably and detrimentally relied on the defendant's misrepresentation, no such "reliance" element must be proved to obtain a conviction for mail fraud. *See Armco Indus. Credit Corp. v. SLT Warehouse Co.,* 782 F.2d 475, 481–82 (5th Cir.1986).

*Id.* at 336. *See also Merklinger,* 16 F.3d at 678.

Other courts have held that reliance need not be shown to support a civil RICO action premised upon mail or wire fraud. *See United HealthCare Corp. v. American Trade Ins. Co., Ltd.,* 88 F.3d 563, 571 (8th Cir.1996) (plaintiff's detrimental reliance upon misrepresentation or omission made by defendant is not required to prove mail or wire fraud); *Akin v. Q–L Investments, Inc.,* 959 F.2d 521, 533 (5th Cir.1992) ("Plaintiffs' problems of proof with respect to securities fraud do not necessarily haunt their claim of mail fraud

since reliance is not an element of mail fraud.").

Although the Sixth Circuit has found that a misrepresentation or omission and reliance are not necessary to show mail fraud in the *criminal* context, it has intimated that a plaintiff in a civil RICO action must show reliance. In *Central Distributors of Beer, Inc. v. Conn,* 5 F.3d 181 (6th Cir.1993), *cert. denied,* 512 U.S. 1207, 114 S.Ct. 2678, 129 L.Ed.2d 812 (1994), the Sixth Circuit held:

> "To allege a violation of the mail fraud statute, it is necessary to show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." *Schreiber,* 806 F.2d at 1399–1400. "Similarly, a wire fraud violations [sic] consists of (1) the formation of a scheme or artifice to defraud (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Id.* at 1400. Therefore, Central Distributors cannot maintain a civil RICO claim against these defendants absent evidence that the defendants made misrepresentations or omissions of material fact to Central Distributors and evidence that Central Distributors relied on those misrepresentations or omissions to its detriment. *See Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir.1984).

*Id.* at 184. *See also Kenty v. Bank One, Columbus, N.A.,* 92 F.3d 384 389–90 (6th Cir.1996); *Merklinger,* 16 F.3d at 678; *McGee v. City of Warrensville Heights,* 16 F.Supp.2d 837, 848–49 (N.D.Ohio 1998).

The Sixth Circuit's approach has been criticized. *See* Genco, *supra* note 25, at 384 ("[t]he suggestion that false pretense or deceit-like elements should be read into 'scheme to defraud' is inconsistent not only with the Supreme Court's jurisprudence, but also traditional fraud jurisprudence outside of the deceit area. Even the common law did not require a showing of reliance as the exclusive means of showing proximate cause.").

Moreover, it is difficult to understand why the Sixth Circuit would not require the same showing to establish mail fraud in the criminal RICO context and the civil RICO context. Instead, the Sixth Circuit requires a more stringent showing in the civil context. *See United States v. Kassouf,* 144 F.3d 952, 957 (6th Cir.1998) ("[c]ourts should interpret statutes that impose criminal liability narrowly to ensure proper notice to the accused."); *United States v. Waechter,* 771 F.2d 974, 978 (6th Cir.1985) ("[w]e are mindful of the thoroughly established principal [sic] that the conduct prohibited by a criminal statute is to be narrowly construed.").

While this Court believes the better rule should not require a showing of reliance to establish mail or wire fraud as predicate acts in a civil RICO case, the Sixth Circuit seems to require such a showing. The Court now discusses the effect of this showing upon the decision over whether to certify this case as a class action.

### c. Effect of reliance determination upon typicality determination

■ Defendants suggest that because Plaintiff Funds likely will need to show reliance to support their mail fraud allegations in the civil RICO claim, their claims are not typical. The Court disagrees. The typicality test of Rule 23(a)(3) assures that the claims of the representative party are similar enough to the claims of the class so that he will adequately represent them. A representative party's claims need not be identical. *See* 7A Charles Alan Wright et al., Federal Practice and Procedure § 1764 (2 ed.1986); *Senter,* 532 F.2d at 523 ("[f]actual identity between the plaintiff's claims and those of the class he seeks to represent is not necessary"); *In re Telectronics Pacing Systems, Inc., Accufix Atrial J Leads Prods. Liability Lit.,* 164 F.R.D. 222 (S.D.Ohio 1995) ("[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.... The typicality requirement may be satisfied even if there are factual distinctions between the class members and those of other class members.").

■ Defendants say that the representative plaintiffs will have difficulty showing reliance and will have resulting difficulty showing mail fraud. Even if this is true, however, it does not necessarily follow that the plaintiffs' claims are not representative of the class. The typicality test was described in the Newberg treatise:

> Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.

1 Newberg & Conte, *supra,* at § 3.13 (footnotes omitted).

A class representative need not show a probability of success on the merits to maintain a class action. Also, a class action is not stopped because the class representative may have difficulty succeeding upon the merits. Typicality is not a test of the underlying merits of the plaintiffs' claims. Rather, the focus of the court is properly on the typicality of the plaintiff's claim as it applies to the general liability issues, not on the plaintiff's ultimate ability to recover. *Id.* at § 3.16.

The commonality and typicality requirements for class certification tend to merge, in that both serve as guideposts for determining whether, under the particular circumstances, maintenance of a class action is economical and whether a named plaintiff's claim and class claims are so interrelated that interests of the class members will be fairly and adequately protected in their absence. *Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. 2364.

Defendants further argue that plaintiffs will need to show reliance through testimony from each member of the class. However, class certification is premised upon giving a decision governing all class members, but based upon evidence from only some members of the class. If the experience of the

named plaintiffs is typical, the evidence presented will fairly represent the claims and the weaknesses of the class claims.

Defendants suggest that certain trustees of the named plaintiffs will give testimony weakening any claim of reliance or resulting damages. But if such evidence is typical of the class, it is properly received as typical of the class experience. Stated otherwise, the strength or weakness of the named plaintiffs' claims is not an argument that those claims are not typical. No evidence before this Court suggests that nonparty class members' claims differ in any substantial aspect from the claims of the named plaintiffs.

The Court finds Plaintiff Funds' claims to be typical of the class claims as a whole. First, the claims appear to arise from the same practices or course of conduct by the defendant. Second, the claims are based on the same or similar legal theories. Third, any difficulties of proof faced by the named plaintiffs appear similar to difficulties that members of the proposed class would have. Accordingly, the Court concludes that Plaintiff Funds satisfy the typicality requirement under Rule 23(a)(3). Having decided this issue, the Court next decides whether the plaintiffs meet the requirement of adequate representation under Rule 23(a)(4).

### 4. Adequacy of Representation

Under Rule 23(a)(d), a plaintiff seeking class certification must establish he or she will fairly and adequately represent and protect the interests of the class. *In re American Med. Sys., Inc.*, 75 F.3d at 1083. This requirement is "essential to due process, because a final judgment in a class action is binding on all class members." *Id.* (citing *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940)).

■ Adequacy of class representation is initially measured by two standards. First, class counsel must be qualified, experienced and generally able to conduct the litigation. Second, class members must not have interests that are antagonistic to one another. *Id.* (citing *Senter*, 532 F.2d at 525.)[26] The Court evaluates each of the standards.

First, Plaintiff Funds are represented by law firms and individual attorneys with broad experience in RICO, Ohio Corrupt Activity Act, and antitrust claims, including claims involving tobacco. These firms and attorneys are well qualified to represent the class. The defendants in this case do not challenge the qualifications or ability of plaintiffs' counsel to effectively represent a class of the size and magnitude potentially involved in this case.

This Court has reviewed and considered the qualifications of plaintiffs' counsel and finds that counsel have sufficient experience and ability to fairly and adequately represent the interests of the class. Accordingly, the first prong of the adequacy of representation requirement under Rule 23(a)(4) is met.

■ The second prong of Rule 23(a)(4) requires a court to determine whether the named plaintiffs have interests that are antagonistic to the proposed class members. Interests are antagonistic when there is evidence that the representative plaintiffs appear unable to "vigorously prosecute the interests of the class." *In re American Med. Sys.*, 75 F.3d at 1083. A plaintiff's inability to prosecute may arise due to a conflict of interest with other members of the class, or from physical concerns such as poor physical health or competency. *Id.* A representative plaintiff should further have a stake in the outcome of the litigation and should be familiar with the facts and conditions of the case. *Alexander Grant & Co.*, 116 F.R.D. at 589 (citations omitted).

---

**26.** *See also Alexander Grant & Co.*, 116 F.R.D. at 588–89 (stating "[t]here are typically three factors that make up the common interest determination in the first step: is the representative a class member, does the representative have a stake in the outcome, and is the representative familiar with the facts and conditions to be challenged."); *Jackshaw Pontiac, Inc.*, 102 F.R.D. at 191 (stating that "[I]n making the determination of adequacy of representation, the District Court should consider the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent") (quoting *Cross v. National Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir.1977)).

In this case, the Court finds that Plaintiff Funds' interests in this litigation are not sufficiently antagonistic to the interests of other proposed class members to defeat class certification under Rule 23(a)(4). First, the Court finds no evidence that the named plaintiffs are incapable of competently prosecuting this case. As related, the Court finds no evidence that the representative plaintiffs differ from the class members in any significant circumstance which would obstruct their ability to vigorously represent the proposed trust fund class.

Second, as discussed earlier, Plaintiff Funds have sufficiently established that they share a common interest in this litigation with other class members. The Funds have shown the proposed trust fund class consists of other similarly-situated health and welfare trusts that have paid increased medical care costs for smoking-related illnesses. The named plaintiffs also have shown that, despite likely differences in the amount of damages presumably sustained by each trust, these damages allegedly arose out of a common course of conduct or a common nucleus of fact.

Having determined that class counsel is qualified, experienced and generally able to conduct this litigation, and having decided that the class members do not have interests that are antagonistic, the Court concludes that the requirements for adequate representation under Rule 23(a)(4) are satisfied.

Upon review of the four elements necessary to class certification under Rule 23(a), the Court concludes that Plaintiff Funds sufficiently satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). As all four requirements have been met, the Court next must consider whether Plaintiff Funds' motion to certify this case as a class action survives the additional requirements for certification under Rule 23(b).

### B. Rule 23(b)(3)

Besides the four prerequisites for class certification enumerated under Fed.R.Civ.P 23(a), the moving party also must show that a class is maintainable under Rule 23(b)(1), (2) or (3). Here, the plaintiffs seek certification under Rule 23(b)(3). Rule 23(b)(3) states that a class action may be maintained if:

> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

In deciding whether class certification is appropriate under Rule 23(b)(3), courts should consider issues of fairness and judicial economy. It is well established that to satisfy Rule 23(b)(3), a plaintiff must meet two general requirements. First, a plaintiff must show that common questions predominate over individual questions. Second, a plaintiff must show that use of the class action device is superior to other available means of adjudicating the controversy. Fed.R Civ.P. 23(b)(3). The Court evaluates these two requirements.

#### 1. Predominance

Rule 23(b)(3) "parallels subdivision 23(a)(2)" in that both sections require that common questions of law or fact exist. However, subdivision 23(b)(3) contains "the more stringent requirement that common issues 'predominate' over individual issues.'" *In re American Med. Sys., Inc.*, 75 F.3d at 1084.[27]

27. In *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188 (6th Cir.1988), the Sixth Circuit Court of Appeals discusses the use of Rule 23(b)(3) in relation to mass torts. Although the instant case is not a mass tort case, the Court finds the discussion in *Sterling* helpful. The Circuit Court states:

When considering the first of these requirements—whether common issues will predominate over individual questions—courts should attempt to weigh fully "the value of allowing individual actions to be instituted so that each person can protect his own interests and the economy that can be achieved by allowing a multiple party dispute to be resolved on a class action basis." Wright et al., *supra,* § 1777 at 518–19. Further, when deciding whether common questions of law or fact predominate, courts frequently consider issues of liability. This is especially true in cases involving conspiracy and antitrust claims. 4 Newberg & Conte, *supra,* § 18.25 at 18–83.[28]

In the instant case, the defendants argue that this case should not be certified as a class action because individual questions of law or fact predominate. Defendants also argue that individual issues requiring specific testimony and examination of the nature of each individual trust funds' claims will engulf the litigation. The defendants suggest the Court ultimately will be required to consider and evaluate individualized proof and independent evidence regarding the claims of each of the more than 100 trust funds. The Court disagrees.

In this case, the Funds claim that defendants engaged in a common course of misrepresentations designed to affect all plaintiffs in a like fashion. In making the claim that defendants engaged in similar wrongful conduct, plaintiffs cite to defendants' advertisements and public statements. Plaintiffs aver that these denied health risks and addiction, and cast doubt on the link between smoking and disease. These allegations sufficiently establish issues common to the class. *See Alexander Grant & Co.,* 116 F.R.D. at 590–91 ("As to common quesions, if the same theory of liability is asserted ... and the same basic defenses will be raised ... this [predominance] requirement is satisfied.").

As discussed earlier in this opinion, Plaintiff Funds have given sufficient evidence that members of the proposed trust fund class are similarly managed and operated and share a common fiduciary obligation to the funds and their participants. Plaintiff Funds also give evidence that they and other class members made certain financial expenditures to provide health care benefits for tobacco-related illnesses. Further, the plaintiffs have shown that proposed trust fund class members have claims against the defendants based upon the same or similar legal theories as the named plaintiffs. As these similar claims include violations of federal and state RICO and antitrust laws, the Court finds the proposed class members can sufficiently protect their interests by participating as members of the proposed class.[29]

The procedural device of a Rule 23(b)(3) class action was designed not solely as a means for assuring legal assistance in the vindication of small claims but, rather, to achieve the economies of time, effort, and expense. However, the problem of individualization of issues often is cited as a justification for denying class action treatment in mass tort accidents. While so me courts have adopted this justification in refusing to certify such accidents as class actions, numerous other courts have recognized the increasingly insistent need for a more efficient method of disposing of a large number of lawsuits arising out of a single disaster or single course of conduct....

... In complex, mass, toxic tort accidents, where no one set of operative facts establishes liability, no single proximate cause applies to each potential class member and each defendant, and individual issues outnumber common issues, the district court should properly question the appropriateness of a class action for resolving the controversy. However, where the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy.

*Id.* at 1196–97 (internal citations and footnotes omitted). *See also In re American Med. Sys., Inc.,* 75 F.3d at 1084 (quoting same in context of medical device product liability case).

28. Commentators suggest that a "dominant pattern has emerged" in class action decisions where "courts have repeatedly focused on the liability issues, in contrast to damage questions, and if they found issues were common to the class, have held that Rule 23(b)(3) is satisfied." 4 Newberg & Conte, *supra,* § 18.25, at 18.83 (footnote omitted).

29. *See* 4 Newberg & Conte, *supra,* § 18.25, at 18–86 through 18–87, stating: "Courts have held that a central or overriding issue or a *common nucleus of operative facts* will satisfy the predominance requirement of Rule 23(b)(3). In antitrust cases, the issues of conspiracy, monopolizations, and conspiracy to monopolize have been viewed

Further, because the Court is persuaded that trying this case as a class action will promote judicial economy. Defendants argue that class members are sophisticated entities which regularly receives expert advice on legal, health care and financial issues. If so, judicial economy is not served by later repeating the huge expenditure, of resources that has attended this litigation. The Court finds that common issues regarding the defendants' liability predominate. The Court also finds that common issues regarding Plaintiff Funds' damage claims predominate.

In this case, Plaintiff Funds propose that the relief for the class be specific economic damage. The Funds say these damages readily can be determined by using a common "damage model" to show a pattern depicting the economic losses allegedly sustained by the class as a whole. Specifically, the plaintiffs suggest that epidemiological evidence will show that smoking causes a fraction of all health expenditures (the "smoking attributable fraction"). Using this methodology plaintiffs then will attempt to quantify the damages caused each plaintiff. Without discussing the merits of this proposed model, and while this model is subject to later challenge, the plaintiffs have presented a model in which common issues of damages predominate. *See* 4 Newberg & Conte, *supra*, § 18.27, at 18–89 through 18–98.

Because the liability decision largely will deal with defendants' conduct, and because the damage determination largely will deal with epidemiological evidence, the Court finds common issues will predominate over individual issues. Having decided this matter, the Court turns to the issue of whether class treatment is a superior method of administering this case.

### 2. Superiority

■ In addition to determining that common issues predominate over individual questions, courts considering class certification questions also must decide whether the class mechanism "is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). To help courts in making this de-

as central issues which will satisfy the predomi-

termination, Rule 23(b)(3) sets out four criteria. These include considering: (1) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed.R.Civ.P. 23(b)(3). *See also* Wright et al., *supra*, § 1777, at 519–20. The Court addresses these factors in turn.

First, the Court does not find that other alternative methods of litigating this case are more desirable than the class mechanism. The foremost alternative to class certification is to "remit the class members to the institution of individual actions." *Id.* at 552. However, considering this Court's previous discussion about the impracticability of joinder and promoting judicial economy, the Court is not convinced that individual suits by the proposed trust fund class members against these particular defendants would be superior to a class action.

There are more than 100 proposed trust fund class members. As discussed, these members share common claims against the defendants. To try these claims as individual suits, especially considering the complex issues typically associated with RICO and antitrust claims, would be costly and time consuming. Those barriers do not promote judicial economy.

In evaluating the second and third guideposts under 23(b)(3), the Court presently is unaware of any other pending litigation related to this instant case that would cause this Court to consider the "extent and nature of any litigation ... already commenced by or against members of the class." Fed.R.Civ.P. 23(b)(3)(B). Thus, the Court does not see a risk of inconsistent adjudications. The Court likewise is not aware of any issue regarding the "desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed.R.Civ.P. 23(b)(3)(C).

nance requirement." (emphasis in original).

Because all proposed trust fund class members are in Ohio, this Court is conveniently located and can accommodate the needs of the parties.

Lastly, the Court has considered the manageability of this case as a class action.[30] The Court finds that the possibility of future administrative difficulties is outweighed by the need to avoid the potential for inconsistent results and the inefficiencies of more than 100 separate trials. To date, the parties have conducted more than 100 depositions. The plaintiffs have identified expert witnesses and have provided reports. Further, document authentication is ongoing. The Court believes that the case is manageable.[31]

Having evaluated the many standards under Rule 23(b)(3), the Court finds that common issues will predominate and that the class action mechanism is a superior method of administering this case. Therefore, Plaintiff Funds have met the requirements of both Rule 23(a) and (b)(3), the Court finds the plaintiffs have carried their burden for class certification.

### III. Conclusion.

For the foregoing reasons, the Court concludes that Plaintiff Funds have satisfied the prerequisites for class certification under both Fed.R.Civ.P. 23(a) and (b). Having decided that this cause is suitable for class action treatment, the Court grants Plaintiff Funds' motion for class certification.

IT IS SO ORDERED.

---

**30.** "Manageability" includes the "the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 164, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Typically, a court's consideration should include inquiry into "the mechanics involved in the administration of the present action." *Id.*

**31.** *See generally* Wright et al., *supra,* § 1780, at 572–585 (outlining certain considerations when determining the manageability of class action suits).